JOURNAL ENTRY and OPINION
Defendant-appellant James A. Day appeals from his conviction after a jury trial for murder with firearm specifications.
Appellant asserts his trial attorneys were ineffective for their failure either to request funds for or to call an expert witness in identification to testify for the defense. Appellant further asserts a witness gave improper testimony with regard to scientific tests he personally did not perform. Appellant finally asserts his conviction is against the manifest weight of the evidence.
After a thorough review of the record, however, this court agrees with none of appellant's assertions. Therefore, his conviction is affirmed.
Appellant's conviction results from an incident that occurred at 2037 West 44th Street, Cleveland, Ohio. Appellant's brother, John Robert Day ("Bobby"), lived in the upstairs unit of the house located at that address. On the evening of May 27, 2000, Bobby and his wife Jessie Hayes were having a spaghetti dinner at their home and had invited several friends to attend.
One of the persons who attended was Jessie's friend, Donna Pack. Donna arrived at approximately 6:00 p.m. She noticed appellant and Bobby were drinking beers while they worked on automobiles parked in the rear yard. Other friends and family were "in and out"[1] of the yard during the course of the evening.
Shortly after midnight, Carlos Maldonado, who had known the Day brothers for "a little over 20 years," happened to walk by while on his way from his nearby home to a convenience store. He saw Bobby, Jessie, Donna, a young man named Jason Schultz, and appellant in the yard. Carlos stopped to greet appellant, whom he hadn't seen in a long while. The men proceeded to chat. During the course of their conversation, Jason displayed a weapon and "show[ed] it off" to the "crowd" around him. By that time, Donna had gone indoors. Jessie made Carlos' trip to the convenience store for him; then she, too, went upstairs to check on her three children.
At approximately 1:00 a.m., Carlos' stepson, Jackson Diaz, drove into the alley that abutted the Day's rear yard. Diaz stopped his vehicle upon seeing Carlos, who approached to speak with him for a few moments. Carlos then decided to accompany Diaz. He entered the passenger side of his stepson's automobile.
Carlos had just seated himself when Bobby went to the driver's side window and offered an apology to Diaz for a misunderstanding that had occurred between them the previous year. Diaz "said something back." Immediately, Bobby started shouting, "Get the gun, get the gun." Carlos saw Jason pass to appellant the weapon Jason had been displaying earlier. Appellant thereupon stepped forward and placed the gun to Diaz's head.
The speed of this turn of events shocked Carlos. He called to appellant, "What are you doing? That's my son. Don't shoot him." Carlos exited the vehicle and circled around its rear. As Carlos reached the driver's side, however, Bobby stopped him by striking Carlos in the forehead with the beer bottle he had been holding.
Carlos reeled backwards, falling onto the palms of his hands. As he pushed himself up, he met his stepson's eyes. Diaz at that moment opened the driver's side door and "tried to bail out."
As Diaz did so, appellant fired the gun at him. Carlos saw that Diaz "grabbed his side and * * * stumbled over" but still attempted to escape. Appellant "shot him again." Diaz managed to stagger after Carlos back through the alley toward Carlos' home.
Carlos "pounded" on his front door, shouting for his wife to open it. As he "grabbed the phone and called 911," he turned to see Diaz fall into the yard. As this was occurring, Bobby appeared in the upstairs unit briefly. Donna by that time was helping Jessie gather the children to leave the premises. After the women and children hurriedly had driven away, Marcella Hoeppner, who lived in the downstairs unit, saw appellant scrambling up the rear staircase.
Within moments of Carlos' emergency call, a police patrol vehicle arrived at the scene. Carlos met it at the corner of Orchard Avenue and the alley. Officer Charles Lavelle was driving. He observed Carlos was bleeding and agitated. Carlos stated his son had been shot, pointed down the alley toward the Days' home, and indicated the gunman had been in that vicinity. Lavelle drove forward a short distance, but halted when he heard two additional shots fired. He then quickly reversed direction.
Lavelle parked his vehicle on Orchard Avenue. He and his partner were exiting when an ambulance and several other police officers arrived at the scene. The officers were required to secure the area before medical technicians were permitted to attend to Diaz.
Appellant shortly thereafter was discovered inside the Day home, lying without his jacket face down on a bed feigning sleep. The officers soon discovered several weapons within twenty feet of appellant's location; one was an unloaded .32 caliber pistol.
Although Diaz by that time had been transported to the hospital, medical efforts to save his life proved unsuccessful. The subsequent autopsy indicated Diaz had sustained two gunshot wounds. The fatal one had pierced his right chest, perforating his right lung, atrium and esophagus before lodging in his left lung. The assistant coroner recovered the bullets from Diaz's body. Forensic analysis of the bullets demonstrated they had been fired by the .32 caliber pistol found in the Day home.
Carlos had sustained only a small laceration on his forehead. Police officers performed a "cold stand" of appellant in front of Carlos as Carlos was leaving the hospital following treatment. Carlos positively identified appellant as the man who had shot his stepson. Appellant subsequently was indicted with his brother and Jason Schultz[2] on four counts[3] as follows: 1) Aggravated murder, R.C. 2903.01(A)(1); 2) Attempted murder, R.C. 2923.02/2903.02; 3) Felonious assault, R.C. 2903.11; and 4) Having a weapon while under disability, R.C. 2923.13. The first three counts contained two firearm specifications, a repeat violent offender specification, and a notice of prior conviction. The last count contained a furthermore clause and a one-year firearm specification. Appellant pleaded not guilty to the indictment and received appointed counsel to represent him.
Appellant's case proceeded to a jury trial separate from that of his co-defendants. After the trial court granted the defense motion for acquittal as to count five, the jury returned verdicts of not guilty on counts two and four, and not guilty of the charge of aggravated murder on count one, however, the jury "deadlocked" as to the lesser-included offense of murder on count one. Therefore, the trial court discharged the jury pursuant to R.C. 2945.36(B) and ordered a retrial of appellant on the remaining charge of murder.
At appellant's second trial, the state presented the testimony of twelve witnesses and also introduced into evidence numerous physical exhibits such as photographs. Appellant elected to present no evidence.
Subsequently, the jury returned a verdict against appellant of guilty of murder with firearm specifications. The trial court thereafter sentenced appellant to the mandatory terms of incarceration of three years for the firearm specification to run prior to and consecutive with a term of fifteen years to life.
Appellant presents four assignments of error in his appeal to this court. The first two are related and thus are addressed together as follows:
 I. THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION WHEN COUNSEL FAILED TO REQUEST THE NECESSARY FUNDS FOR AN EXPERT IN EYEWITNESS IDENTIFICATION.
 II. THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION WHEN COUNSEL FAILED TO CALL AN EXPERT WITNESS IN EYEWITNESS IDENTIFICATION.
Appellant argues his trial attorneys were ineffective for their failure either to request funds from the trial court to employ an expert in eyewitness identification or to summon such a witness to testify. Appellant contends such evidence would have been of value in challenging Carlos' identification of him as the shooter. Appellant's argument lacks merit.
The claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, syllabus 2; see, also, State v. Lytle (1976), 48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, syllabus 3.
The burden is on appellant to prove ineffectiveness of counsel. Statev. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy.Id. The decision to call a witness during the course of trial is a matter of trial strategy. State v. Coulter (1992), 75 Ohio App.3d 219; State v.Hunt (1984), 20 Ohio App.3d 310.
A review of the record in this case reveals that counsels' decision with regard to the lack of necessity for an expert in eyewitness identification was well within the standard of reasonable trial tactics. This was not a situation in which the eyewitness was unfamiliar with the offender. Rather, the evidence established Carlos knew each of the men near his stepson's automobile, each of the men had distinctive features and physical characteristics, the area was well-lit, and Carlos maintained he saw appellant fire the weapon.
In the face of this overwhelming evidence of appellant's guilt, defense counsel chose perhaps the only strategy available, viz., that of questioning Carlos' perspective. State v. James (Sept. 24, 1998), Cuyahoga App. No. 72922, unreported. With their cross-examination and argument, counsel thus emphasized the speed of the turn of events, Carlos' level of intoxication, his distance from appellant and Jason Schultz as opposed to appellant's proximity to Schultz, and the fact that Schultz would have had both more reason and a better opportunity than appellant to respond to Bobby's sudden demand to retaliate against Diaz.
Given the foregoing, it is mere speculation to assert an expert witness in identification would have been crucial to appellant's defense. See, e.g. State v. Kelly (July 12, 2001), Cuyahoga App. No. 78422, unreported.
Appellant can demonstrate, therefore, neither that trial counsels' actions fell below an objective standard of reasonable representation nor that he was prejudiced by trial counsels' actions. State v. Mallard (June 30, 1994), Cuyahoga App. No. 65743, unreported.
Since appellant has failed to support his claim he was denied his right to effective assistance of counsel, appellant's first and second assignments of error, accordingly, are overruled.
Appellant's third assignment of error states:
 III. THE TESTIMONY OF CURTIS JONES WAS IMPROPER UNDER EVID. R. 602 AND 703 AND DENIED THE APPELLANT HIS RIGHT TO CONFRONT WITNESSES UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
Appellant argues the testimony of one of the state's forensic witnesses should have been excluded. Appellant contends that since the witness acknowledged one of his colleagues actually had conducted the evidence tests for blood, gunshot residue and trace metals, introduction of the witness' testimony contravened both the Rules of Evidence and appellant's constitutional right of confrontation. This court disagrees.
It first must be noted appellant did not raise an objection to the witness' testimony, hence, he has waived this argument for purposes of appeal. State v. Williams (1977), 51 Ohio St.2d 112.
At any event, introduction of the testimony was proper. Pursuant to Evid.R. 703, expert opinions may be based upon either personal perception or facts or data admitted into evidence. State v. Solomon (1991),59 Ohio St.3d 124; cf., State v. Jones (1983), 9 Ohio St.3d 123. The witness in this case based his opinion on his colleague's report, which had been introduced into evidence. Camden v. Miller (1986),34 Ohio App.3d 86; Marino v. Scolnick (Apr. 13, 1995), Cuyahoga App. No. 67495, unreported.
Moreover, a review of the record reveals defense counsel thoroughly cross-examined the witness, challenging both his experience and the reliability of the tests. Appellant thus was afforded his constitutional right of confrontation.
Since appellant's third assignment of error, therefore, lacks merit, it also is overruled.
Appellant's fourth assignment of error states:
 IV. THE VERDICT IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his one-sentence declaration with respect to this assignment of error, appellant asserts that his identification as the killer is "so weak and tenuous that a new trial must be ordered." Not so.
The Ohio Supreme Court indicated in State v. Thompkins (1997),78 Ohio St.3d 380 at 386 that the correct test to be utilized when addressing the issue of manifest weight of the evidence was set forth inState v. Martin (1983), 20 Ohio App.3d 172, as follows:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here the test is much broader. The Court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See Tibbs v. Florida (1982), 457 U.S. 31, 38, 42. (Emphasis added.)
Moreover, a reviewing court will not reverse a verdict where there is substantial evidence upon which the jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169; State v. Jenks (1991),61 Ohio St.3d 259. It is axiomatic that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to determine. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
The state's witnesses in this case presented a logical and, in view of the rapidity of the sequence of events, coherent summary of the circumstances surrounding Diaz's killing. Carlos testified he earlier had seen Schultz "showing off" a weapon, and when Bobby demanded "the gun," Schultz immediately passed it to appellant, who stood closer to Diaz's window. Carlos then saw appellant aim the gun directly at Diaz and shoot at him as Diaz attempted to flee.
Carlos' testimony was corroborated in many incidental respects by the testimony of other witnesses. For example, Pack indicated Jessie Hayes went to the convenience store for Carlos while he stayed to chat. Carlos' neighbor further observed Carlos frantically running to his home after the shooting, closely followed by Diaz, who collapsed upon reaching Carlos' yard.
Morever, the Days' neighbor watched appellant scrambling upstairs after she heard the gunfire. This occurred also after Pack saw Bobby abscond and after Pack and Hayes had fled with the children. Appellant thus was the only occupant of the unit when the weapon that had fired the fatal bullet was found in close proximity to him.
In short, there was consistent, credible evidence adduced at trial to support the jury's verdict appellant was guilty of using a firearm to murder Diaz. See e.g., State v. James, supra, State v. Tart (June 8, 2000), Cuyahoga App. No. 76223, unreported.
Accordingly, appellant's fourth assignment of error also is overruled.
Appellant's conviction and sentence are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J., and PATRICIA A. BLACKMON, J., CONCUR
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] Schultz's name was spelled "Shults" on the indictment but spelled "Schultz" in the transcript of appellant's trial.
[3] Count three of the indictment charged only appellant's brother with one count of felonious assault.