The STATE of Ohio, Appellee,

v.

COULTER, Appellant.

[Cite as *State v. Coulter* (1992), 75 Ohio App.3d 219.]

Court of Appeals of Ohio,
Warren County.

No. CA91–06–049.

Decided May 11, 1992.

*Timothy A. Oliver,* Prosecuting Attorney, and *Gregory M. Clark,* for appellee.

*Patrick D. Long,* for appellant.

*Per Curiam.*

Defendant-appellant, Anita M. Coulter, appeals convictions in the Warren County Court of Common Pleas for murder and tampering with evidence.

On March 18, 1991, the Warren County Grand Jury returned a two-count indictment against appellant. Count One charged appellant with murder pursuant to R.C. 2903.02(A) for purposely causing the death of Geneva L. Jones. Count Two charged her with tampering with evidence pursuant to R.C. 2921.12(A) for removing and concealing the murder weapon with purpose to impair its availability as evidence in the murder investigation.

A jury trial commenced on May 28, 1991. The evidence revealed that on March 2, 1991, the evening before the murder, appellant and her boyfriend, Joseph Sheppard, were preparing to go to a bar called Brewer's Gin Mill in Middletown, Ohio. Before they left, Sheppard gave appellant a pocket knife, saying she might need it. Appellant put the knife in her rear pants pocket. The pair left and proceeded to the bar.

At some point in the evening, Sheppard left the bar without telling appellant. Appellant remained in or around the bar until Jones came in about an hour later, followed closely by Sheppard. Sheppard and Jones had once had a romantic relationship and appellant was always afraid that they would some-day get back together. Sheppard and appellant had an argument that resulted in appellant hitting Sheppard in the head with a beer can, cutting his forehead. The bar bouncer separated the two and told Sheppard to leave the bar. Jones remained inside the bar for approximately twenty to twenty-five minutes before leaving separately. No contact at all occurred between Jones and appellant.

Over the course of the evening, appellant drank ten to twelve beers and smoked two to three marijuana cigarettes. When the bar closed around 2:30 a.m. on March 3, 1991, appellant and Sheppard met again and decided to find Jones. Appellant stated at various times that her reason for seeking out Jones that night ranged from merely to talk, to settle "some shit," or to fight Jones.

Appellant and Sheppard first stopped by the victim's residence and found only Kenny Robinson, the boyfriend of the victim's sister. Robinson testified that appellant said that she "was going to kill the bitch," referring to Jones. Appellant and Sheppard learned that Jones was using the car of her friend, Tonya Dykes, that night, so they went to Dykes' residence at 342 Victory Lane in Franklin, Ohio. Before they arrived, appellant asked to use a larger knife which Sheppard had been carrying, but Sheppard refused, saying he might need it.

Upon arriving at Dykes' residence on Victory Lane, Sheppard backed his truck into a parking space and probably left the engine running. Appellant, thinking there would be trouble, removed the knife from her pants pocket and

put it into her coat pocket. Both appellant and Sheppard got out of the truck and approached the front entrance to the residence.

Several individuals were in Dykes' residence. Some witnesses saw Sheppard, but no one noticed appellant approaching the residence at all. There was a struggle between appellant and Jones on the front walk. Witnesses said they saw appellant on top of Jones, seemingly "punching" her. Throughout the struggle, the only weapon used was appellant's knife. Though the attack was over very quickly, Jones suffered serious stab wounds to the face, head, chest, shoulder, armpit, rear shoulder, abdomen, and buttocks. The stab wounds were up to four inches deep, some surrounded by bruises caused by the knife handle hitting the body. One wound went through the rib cage to the heart, puncturing the right ventricle. Jones was almost lifeless after the attack ended. She died soon afterwards of multiple stab wounds and loss of blood.

Appellant, by contrast, suffered no injuries except for a small cut in the finger and a scrape on the forehead. Appellant and Sheppard immediately got back into Sheppard's truck and fled the area. On the way back to appellant's babysitter's trailer on South Main Street in Middletown, appellant threw the knife she used to stab Jones out the window. During the drive to Middletown, Sheppard told appellant to claim that Jones originally had the knife and that appellant took the knife away and used it in self-defense.

The Franklin and Lemon Township Police Departments arrested appellant and Sheppard at the babysitter's trailer. As Sheppard was being led away, the police noticed a knife in his pocket, and were discussing it. Police officers testified that appellant apparently overheard this discussion and stated, "[t]hat's not the knife I killed the bitch with. I threw it out the window on the way down here from Franklin."

During the next couple of days, appellant gave several statements, both taped and written, to the police. She also testified at the grand jury hearing. Though appellant always alleged that she was frightened of Jones and that she used the knife only in self-defense, her statements contained numerous inconsistencies. For example, she originally told police she found the knife on the ground. She later told them she took the knife away from Jones. Eventually, appellant admitted to police she had obtained the knife from Sheppard and that he had told her to throw the knife out the window. In her various statements, she also admitted that the stabbing was intentional and that it might have been a form of revenge for a prior beating she attributed to Jones.

Appellant testified that on July 4, 1990, several months prior to the stabbing, she was severely beaten by Jones and was rendered unconscious.

The beating left her with a bloody mouth and nose, two black eyes and a broken nose for which she had to be taken to the hospital. However, she later admitted that she did not specifically know who beat her because she was so drunk. Other witnesses testified that there was a confrontation between appellant, Jones and a few others on July 4 at appellant's apartment. They testified that appellant was extremely drunk, that she became crazed and that she chased them out of the apartment with a butcher knife. They stated that appellant apparently did suffer some minor injuries, but in reality it was Jones who was afraid of appellant.

Appellant testified that in September 1990, she moved in with Sheppard. Appellant claimed that Jones would drive by the trailer where she and Sheppard lived, yelling obscenities at appellant and saying that she was going to get her. Appellant also claimed that Jones told other people that she was going to catch appellant and hurt her. However, other witnesses testified it was appellant who had made threats on Jones' life.

On the evening before the murder, after appellant had the fight with Sheppard at the bar, she claimed that she called her ex-husband and attempted to get a ride to his home in Trenton. However, she could not reach him. She asked other persons to take her to her ex-husband's home in Trenton, but could not get a ride. She claimed she would not go outside, although urged by many friends, because she was afraid that Jones was waiting to hurt her.

Appellant further testified that when the bar closed at 2:30 a.m., she agreed to let Sheppard drive her to her ex-husband's house in Trenton. Sheppard took her to Trenton, but would not let her out of the truck. Sheppard told her they were going to confront Jones about harassing them. Appellant claimed that she did not want to go. Upon arriving at Dykes' residence in Franklin, Sheppard ordered appellant to get out of the truck. Appellant was afraid that if she did not get out of the truck, Sheppard would hit her.

Robinson, Jones' sister's boyfriend, had been following them and went in the house to confront his girlfriend about her activities that evening. The persons inside were concerned about an argument between the two and were not paying attention to the events outside. Appellant claimed that Jones came out of the residence and began screaming at Sheppard. Upon seeing appellant, Jones rushed towards her. Appellant pulled out the knife with the blade waist high and the tip pointing back towards appellant in an attempt to scare Jones so that Jones would not harm her. However, Jones either did not see the knife or ignored it and attacked appellant. The two fell to the ground and began wrestling. Appellant claimed Jones put her in a headlock from which she could not escape before she began using the knife. Appellant did not

remember the fight ending. Appellant stated that she told the police that she originally lied about the knife in order to protect Sheppard.

At the close of the evidence, the trial court instructed the jury on self-defense and the lesser included offense of voluntary manslaughter. However, the trial court refused appellant's request for an instruction on the lesser included offense of involuntary manslaughter. The jury found appellant guilty of murder and tampering with evidence as charged in the indictment. This appeal followed.

Appellant presents six assignments of error for review. In her first assignment of error, appellant states that the trial court erred in refusing to give the jury an instruction on the lesser included offense of involuntary manslaughter. Appellant argues that the evidence supports the conclusion that she unintentionally killed the victim while in the commission of an unlawful act. We find this assignment of error is not well taken.

The Ohio Supreme Court has adopted a two-prong test to determine whether a jury instruction on a lesser included offense is warranted. First, the trial court must determine whether the offense on which the instruction is requested is a lesser included offense of the charged crime by comparing their statutory elements. *State v. Johnson* (1988), 36 Ohio St.3d 224, 225, 522 N.E.2d 1082, 1083; *State v. Kidder* (1987), 32 Ohio St.3d 279, 280, 513 N.E.2d 311, 313. R.C. 2903.02(A), murder, provides that "[n]o person shall purposely cause the death of another." R.C. 2903.04, involuntary manslaughter, provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit * * * " a misdemeanor or felony. The distinguishing factor between these two offenses is the mental state involved in the act. *State v. Thomas* (1988), 40 Ohio St.3d 213, 216, 533 N.E.2d 286, 289, certiorari denied (1989), 493 U.S. 826, 110 S.Ct. 89, 107 L.Ed.2d 54. Ohio courts have conducted the statutory analysis and held that involuntary manslaughter is a lesser included offense of murder. *Thomas, supra,* 40 Ohio St.3d at 215, 533 N.E.2d at 288; *Kidder, supra,* 32 Ohio St.3d at 282, 513 N.E.2d at 315.

Second, the court must examine the facts and determine whether the jury could reasonably conclude that the evidence supports the conviction for the lesser offense and not the greater. *Kidder, supra,* at 280, 513 N.E.2d at 313. Even though an offense may be statutorily defined as a lesser included offense of another, a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *Thomas, supra,* paragraph two of the syllabus. Therefore, in a murder trial, an instruction on the lesser included offense of involuntary

manslaughter will be given only when, on the evidence presented, the jury could reasonably find against the state on the element of purposefulness and still find for the state on the defendant's act of killing another. *Id.*, 40 Ohio St.3d at 216, 533 N.E.2d at 289.

■ Appellant argues that she only intended to scare Jones and that she wanted to prevent Jones from hurting her. Appellant claims that she unintentionally killed the victim in the course of committing felonious assault, aggravated menacing or other offenses and, therefore, an instruction on involuntary manslaughter was appropriate. We disagree.

A person acts purposely when "it is his specific intent to cause a certain result * * *." R.C. 2901.22(A). A person is presumed to intend the natural, reasonable and probable consequences of his or her voluntary acts. *Thomas, supra,* at 217, 533 N.E.2d at 290. " * * * Where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill." *State v. Jester* (1987), 32 Ohio St.3d 147, 152, 512 N.E.2d 962, 968, certiorari denied (1988), 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 871. See, also, *State v. Clark* (1988), 38 Ohio St.3d 252, 256, 527 N.E.2d 844, 849, certiorari denied (1989), 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 823.

The state presented evidence that appellant made a number of threats on the victim's life. The victim received numerous stab wounds up to four inches deep. One wound pierced through the rib cartilage and penetrated to her heart. Appellant, on the other hand, suffered only very minor injuries. In light of the shear number and depth of the victim's wounds, and other evidence of appellant's intent, we hold that the jury could not reasonably have found that the killing was anything other than purposeful. See *Clark, supra,* 38 Ohio St.3d at 256, 527 N.E.2d at 849; *State v. Gaither* (Apr. 27, 1987), Butler App. No. CA84-08-098, unreported, at 20, 1987 WL 10354; *State v. Puckett* (Nov. 23, 1987), Butler App. No. CA87-03-036, unreported, at 8-9, 1987 WL 20379. Accordingly, the trial court did not err in refusing to give an instruction on involuntary manslaughter, and appellant's first assignment of error is overruled.

■ In her second assignment of error, appellant states that the trial court erred in admitting into evidence appellant's statement, "[t]hat's not the knife I used to kill the bitch with." She argues that the statement's probative value was outweighed by its prejudicial effect. We find this assignment of error is not well taken. Evid.R. 403(A) provides:

"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

The decision whether to exclude relevant evidence under Evid.R. 403 rests within the sound discretion of the trial court. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 224, 24 O.O.3d 322, 325, 436 N.E.2d 1008, 1012; *State v. Jurek* (1989), 52 Ohio App.3d 30, 35, 556 N.E.2d 1191, 1196.

Appellant's statement was important evidence of her intent at the time of the stabbing. The state was required to prove that the killing was purposely done. *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 15 OBR 379, 401, 473 N.E.2d 768, 791, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728. Indeed, the primary issue at trial was appellant's intent. The statement tended to show that appellant disliked the victim and wanted her dead, particularly given that the victim was alive when appellant last saw her. Appellant's primary argument seems to be that the word "bitch" was unduly inflammatory. However, appellant's use of that word tended to show that the killing was a purposeful "revenge murder" rather than merely self-defense. Given the already gruesome nature of the case, the word "bitch" in appellant's statement cannot reasonably be said to be so inflammatory as to render the entire statement inadmissible.

We cannot conclude that the statement's probative value was outweighed by the danger of *unfair* prejudice, which is the showing required by Evid.R. 403(A). The trial court's decision to admit this statement was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172, 404 N.E.2d 144, 148. Accordingly, appellant's second assignment of error is overruled.

In her third assignment of error, appellant states that the trial court erred when it excluded testimony of an expert witness concerning appellant's mental state at the time of the offense. Appellant argues that the issue of self-defense is dependent upon the state of mind of the defendant and psychological testimony would have demonstrated that she had a heightened fear of the victim. We find this assignment of error is not well taken.

In order to establish self-defense, the defendant must establish, among other things, that she had a bona-fide belief that she was in imminent danger of death or great bodily harm, and that the only means of escape from the danger was the use of force. *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus; *State v. Melchior* (1978), 56 Ohio St.2d 15, 20–21, 10 O.O.3d 8, 11–12, 381 N.E.2d 195, 199–200. This test is subjective and the defendant's state of mind is crucial in determin-

ing whether she acted in self-defense.  *State v. Smith* (1983), 10 Ohio App.3d 99, 100–101, 10 OBR 122, 123–125, 460 N.E.2d 693, 695–697.

Evid.R. 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

When an issue of fact is within the experience, knowledge, and comprehension of the trier of fact, expert opinion testimony on that issue is unnecessary and inadmissible since it would not assist the trier of fact in understanding the evidence or determining a fact in issue.  *Lee v. Baldwin* (1987), 35 Ohio App.3d 47, 50, 519 N.E.2d 662, 664.  See, also, *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 148–149, 524 N.E.2d 881, 885–887.

■ We cannot conclude that the expert testimony appellant sought to introduce met the requirements of Evid.R. 702.  Appellant claimed at trial that she was terrified of Jones because Jones had savagely beaten, harassed and threatened her.  We do not think this concept was beyond the comprehension of the average juror.  The jury could adequately determine whether appellant was afraid of Jones and whether she had an honest belief on the night of the stabbing that she was in imminent danger of severe bodily harm from the facts presented.  Expert testimony on that issue would only have served to invade the province of the jury.  See *McQueen v. Goldey* (1984), 20 Ohio App.3d 41, 47–48, 20 OBR 44, 49–51, 484 N.E.2d 712, 719–720.

Appellant relies on *State v. Koss* (1990), 49 Ohio St.3d 213, 551 N.E.2d 970.  In *Koss*, the Ohio Supreme Court overruled its previous holding in *State v. Thomas* (1981), 66 Ohio St.2d 518, 20 O.O.3d 424, 423 N.E.2d 137, and held that "[t]he battered woman syndrome has gained substantial scientific acceptance to warrant admissibility into evidence" in cases where a woman is accused of murdering an abusive spouse or lover.  *Id.* at paragraph one of the syllabus.  The Supreme Court concluded that expert testimony on the syndrome was admissible to assist the trier of fact to determine whether the defendant acted out of an honest belief that she was in imminent danger of great bodily harm and that the use of force was her only means of escape.  *Id.* at paragraph three of the syllabus.

Appellant has not claimed that she is a "battered woman" within the definition set forth in *Koss*.  She argues that *Koss* indicates that expert testimony can be admitted in any case when the affirmative defense of self-defense is raised in order to assist the jury in determining whether the defendant had an honest belief that she was in imminent danger.  We

disagree. From our reading of *Koss,* we conclude that the Supreme Court's holding was a narrow one.

In *Koss,* the court determined that evidence on the battered woman syndrome would assist the jury by dispelling popular misconceptions about battered women. *Id.,* 49 Ohio St.3d at 216, 551 N.E.2d at 973. The Supreme Court repeatedly emphasized that it was not creating a new defense or justification. *Id.* at 217, 551 N.E.2d at 974. Further, the majority opinion, together with Justice Holmes' concurring opinion, make it clear that the court overruled *Thomas, supra,* only insofar as it held that evidence on the battered women syndrome was inadmissible. *Koss, supra,* at 220, 551 N.E.2d at 976 (Holmes, J., concurring). Except for a narrow exception in cases involving the battered woman syndrome, the law as it existed prior to *Koss* has not changed. Expert testimony regarding the defendant's state of mind remains inadmissible. See *Thomas, supra,* 66 Ohio St.2d at 521, 20 O.O.3d at 426, 423 N.E.2d at 139; *State v. Wilcox* (1982), 70 Ohio St.2d 182, 24 O.O.3d 284, 436 N.E.2d 523 (psychiatric testimony is inadmissible for purposes unrelated to the insanity defense); *State v. Poling* (May 17, 1991), Trumbull App. No. 88–T–4112, unreported, 1991 WL 84229 (an expert may offer an opinion as to whether the defendant was a battered woman but the expert may not testify that the defendant believed that she was in imminent danger). Accordingly, we find appellant's reliance on *Koss, supra,* to be misplaced.

In sum, we conclude that the expert testimony appellant sought to introduce would not have assisted the jury, and it was therefore inadmissible under Evid.R. 702. Accordingly, the trial court did not err in excluding the expert testimony, and appellant's third assignment of error is overruled.

In her fourth assignment of error, appellant states that she was denied effective assistance of counsel. Appellant argues that defense counsel failed to subpoena defense witnesses who could have helped the defense and advised her not to take a plea bargain which would have resulted in a lesser sentence. We find this assignment of error not well taken.

In order to sustain a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. To establish that counsel's performance was deficient, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687–688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693–694. To establish prejudice, a defendant must show that there is a reasonable possibility that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697. A

properly licensed attorney is presumed competent and the defendant bears the burden of showing ineffective assistance of counsel. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155–156, 524 N.E.2d 476, 478–480, certiorari denied (1988), 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550.

Judicial scrutiny of counsel's performance must be highly deferential. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523, 539, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177, 103 L.Ed.2d 239.

Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics. The mere failure to subpoena witnesses for a trial is not a substantial violation of defense counsel's essential duty absent a showing of prejudice. *State v. Hunt* (1984), 20 Ohio App.3d 310, 312, 20 OBR 411, 413, 486 N.E.2d 108, 110; *State v. Reese* (1982), 8 Ohio App.3d 202, 203, 8 OBR 273, 274, 456 N.E.2d 1253, 1254. Appellant has not demonstrated that her counsel's failure to subpoena the witnesses she claims would have assisted her defense would have changed the result of the proceedings. Indeed, the testimony of these witnesses, especially Sheppard, clearly had the potential to be adverse to appellant's interests.

As to the plea bargain, at the beginning of a trial, defense counsel described a plea bargain in which appellant would be sentenced to a term of ten to twenty-five years on the charge of voluntary manslaughter and a two-year term on the offense of tampering with evidence to be served consecutively with the voluntary manslaughter charge. Additionally, appellant would agree not to file for shock probation before she had served five years. Actual incarceration would not have been mandatory. On the record, appellant's counsel stated that he had not recommended that appellant take the plea bargain. Following appellant's conviction, she was sentenced to serve a term of fifteen years to life on the murder charge and a term of two to fifteen years on the charge of tampering with evidence to be served consecutively.

Regardless of the sentence imposed, under the plea bargain appellant would still have served a substantial term of imprisonment. Appellant had raised an affirmative defense, which, if believed by the jury, would have resulted in an acquittal. We cannot conclude that counsel's decision to recommend that appellant reject the plea bargain and go to trial fell below an objective standard of reasonableness. We find the decisions of counsel of which

appellant complains to be strategic choices which must be accorded deference. Accordingly, appellant's fourth assignment of error is overruled.

In her fifth assignment of error, appellant states that the prosecutor's cross-examination of appellant resulted in an unfair trial and a miscarriage of justice. Appellant argues that she was prejudiced when the prosecutor asked her questions which did not have a factual basis and which involved gross misstatements of the evidence. We find this assignment of error is not well taken.

In cross-examining appellant, the prosecutor asked her if she remembered making the statement, "I stabbed her to death" to Sheppard in the truck following the stabbing. The prosecutor implied that the statement was on a taped interview made to a police officer. A review of the transcript of the taped interviews which were played to the jury indicates that appellant made no such statement. The prosecutor also asked appellant if Sheppard made the comment, "I didn't expect you to kill her," again implying that appellant had attributed this statement to Sheppard on one of the tapes. A review of the transcripts reveals no such statement.

A cross-examiner may ask a question if the examiner has a good faith belief that a factual predicate for the question exists. *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272, paragraph two of the syllabus, certiorari denied (1989), 492 U.S. 925, 109 S.Ct. 3263, 106 L.Ed.2d 608. " 'The attempt to communicate by innuendo through the questioning of witnesses when the questioner has no evidence to support the innuendo is improper.' " *Gillard, supra,* at 230, 533 N.E.2d at 277, quoting *State v. Williams* (1977), 51 Ohio St.2d 112, 119, 5 O.O.3d 98, 102, 364 N.E.2d 1364, 1368, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156.

In the present case, the prosecution had the possession of the taped interviews before trial and had just played them for the jury. The prosecutor had ample opportunity to know the contents of the statements that appellant made on the tape. The questions asked by the prosecutor put damaging words into appellant's mouth which she did not say and were improper. We caution the prosecution about using such tactics in the future.

Nevertheless, appellant's counsel did not object to the questions and did not ask for a curative instruction. See *Maurer, supra,* 15 Ohio St.3d at 270, 15 OBR at 405, 473 N.E.2d at 795; *United States v. DeFillipo* (C.A.2, 1979), 590 F.2d 1228, 1239–1240, certiorari denied (1979), 442 U.S. 920, 99 S.Ct. 2844, 61 L.Ed.2d 288. It is well established that the failure to object to an error in a criminal proceeding precludes the issue from being raised on appeal unless it rises to the level of plain error. *State v. Underwood* (1983), 3 Ohio

St.3d 12, 13, 3 OBR 360, 361, 444 N.E.2d 1332, 1332. An alleged error does not rise to the level of plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Wickline* (1990), 50 Ohio St.3d 114, 120, 552 N.E.2d 913, 919, certiorari denied (1990), 498 U.S. ——, 111 S.Ct. 281, 112 L.Ed.2d 235. Furthermore, "the plain error rule is to be applied with the utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 4 OBR 580, 581, 448 N.E.2d 452, 453; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. Given the amount of evidence against appellant, including other admissions that she made, we cannot conclude that the prosecutor's use of improper questions rose to the level of plain error. Accordingly, appellant's fifth assignment of error is overruled.

In her sixth assignment of error, appellant states that her conviction was against the manifest weight of the evidence and contrary to law. Appellant argues that the evidence clearly showed that she acted in self-defense. We find this assignment of error is not well taken.

A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. We find that there was substantial evidence from which the jury could reasonably conclude that appellant purposely caused the death of Geneva Jones and attempted to conceal the murder weapon to hinder the investigation and was, therefore, guilty of murder and tampering with evidence. Appellant is essentially arguing that her evidence was more credible. However, credibility is a question of fact to be determined by the jury and a reviewing court should not substitute its judgment for that of the jury. *State v. Walker* (1978), 55 Ohio St.2d 208, 212, 9 O.O.3d 152, 155, 378 N.E.2d 1049, 1051, certiorari denied (1979), 441 U.S. 924, 99 S.Ct. 2033, 60 L.Ed.2d 397. Accordingly, appellant's sixth assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

KOEHLER, P.J., WILLIAM W. YOUNG and WALSH, JJ., concur.