OPINION
On June 14, 2000, Defendant-Appellant Torianno Hector was indicted on one count of aggravated burglary and one count of felonious assault. Following a jury trial, he was convicted of both offenses and sentenced to three years for the aggravated burglary, two years for the felonious assault, and six months for a community control violation, all to be served concurrently. Hector has appealed from this judgment and an attorney was appointed to represent him. On August 14, 2001, appointed appellate counsel filed a brief pursuant to Anders v. California (1967),386 U.S. 738, 87 S.Ct. 1396, wherein appellate counsel represented that he could find no meritorious issues for review. However, appointed appellate counsel did present the following three potential assignments of error:
 I. That the trial court committed reversible error when it failed to excuse a juror for cause, when it was revealed, during the trial, that she lived on the same street as the defendant-appellant. This failure denied defendant-appellant his right to an impartial jury, which, in turn, denied him his right to a fair trial under the state and federal Constitutions.
 II. The trial court erred, to the prejudice of defendant-appellant, when it entered judgment against the defendant-appellant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 III. Defendant-appellant was denied the effective assistance of counsel, in that prior counsel failed to object and excuse a juror when it was revealed during the trial that she lived on the same street as the defendant-appellant.
After counsel filed the Anders brief, this court provided notice for Hector to file his own brief if there were other issues he wanted the court to address. Hector subsequently filed a letter which we have treated as a brief, listing a few claims he wanted to be considered on appeal. We have summarized these issues into the following assignments of error:
 I. Defense counsel was ineffective for failure to interview and call witnesses vital to the defense case.
 II. Defense counsel was ineffective for failing to obtain and offer into evidence phone records to discredit a state witness.
 III. Defense counsel was ineffective for failing to provide Hector with transcripts from a pre-trial.
We will address all assignments of error raised by appellate counsel and Hector in a manner which best facilitates their discussion.
 I
The first and third assignments of error raised by appellate counsel in his brief address the question of whether a juror who lived on the same street as Hector should have remained on the panel after her address was discovered during the course of the trial. The trial court and all counsel extensively questioned the juror in chambers to determine whether living near Hector would have any impact on her impartiality. She assured the court and counsel that she had never seen or met Hector or his family, nor had she ever heard anything about them. Consequently, she stated that the discovery that Hector lived on her street would not affect her fairness and impartiality.
The court has broad discretion when empaneling a jury. State v.Stockton (May 5, 1997), Shelby App. No. 17-96-15, unreported, at p. 5, citing State v. Williams (1983), 6 Ohio St.3d 281, 288 The court's determinations in this process will not be reversed on appeal absent an abuse of that discretion. Id. The burden is on the challenger to show the juror actually has formed an opinion which raises the presumption of partiality. State v. Warner (1990), 55 Ohio St.3d 31, 47, cert. denied (1991), 499 U.S. 961, 111 S.Ct. 1584. We believe that the trial court conducted a sufficient inquiry to determine whether the juror exhibited potential partiality and properly determined that she did not. Consequently, we find no error by the trial court.
Further, Hector argues that his trial counsel was ineffective for failing to object to the juror remaining on the panel. When a defendant raises a claim of ineffective assistance of counsel, a two-step process is involved. We must determine first whether counsel has violated any essential duties to his client, and second, whether the defendant was prejudiced by counsel's ineffectiveness. State v. Bradley (1989),42 Ohio St.3d 136, 141-42. See, also, Strickland v. Washington (1984),466 U.S. 668, 687. When determining the ineffectiveness of counsel's performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 142, citingStrickland, supra, at 688. However, courts must begin with a strong presumption that counsel's performance was professionally reasonable.Id. Even if Hector were able to demonstrate that his trial counsel was deficient, the judgment would not be set aside unless Hector could show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.
As stated previously, we found that the trial court conducted a sufficient inquiry and properly determined that the juror in question was fair and impartial. Accordingly, we do not find that trial counsel was deficient for failing to object to her staying on the panel. Moreover, there is absolutely no evidence that the outcome of the trial would have likely been different had this juror been removed from the panel.
Based on the foregoing, we find that neither of these issues have arguable merit and therefore agree with appellate counsel that they are frivolous pursuant to Anders.
 II
Appellate counsel's second assignment of error challenges that Hector's convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Pursuant to State v. Thompkins
(1998), 78 Ohio St.3d 380, each of these claims require a separate inquiry.
When an appellant alleges a sufficiency of the evidence error, the court must determine whether the evidence is "legally sufficient as a matter of law to support the jury verdict." State v. Clemons (1998),82 Ohio St.3d 438, 444 (citations omitted). More specifically, an appellate court must decide "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Even if an appellate court finds that the evidence was sufficient as a matter of law to convict the defendant, it may still find that the conviction was against the manifest weight of the evidence. Thompkins,supra, at 386. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. When reviewing a manifest weight claim, the appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, supra, at 387. Because the jury had the opportunity to see and hear the witnesses, we must give substantial deference to their credibility determinations. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported, at p. 4.
The evidence from trial can be summarized as follows: On April 29, 2000, John Atkins and Hector's mother and co-defendant, Beverly Davis, held a pay-per-view fight party at Atkins' residence. Atkins and Davis had been good friends for approximately twenty years. Davis brought many of the refreshments for the party. During the evening, there was an argument between Atkins and two of the party attendees which escalated into a physical altercation. The degree of this physical altercation is disputed between the parties. State witnesses claimed Atkins received few or no blows from the altercation, whereas Hector's witnesses claimed that Atkins was hit several times. It is undisputed that Davis intervened on Atkins' behalf.
After the boxing match on television was over, Davis and her granddaughters began to clean up when an argument ensued between Davis and Atkins regarding a missing bottle of alcohol. Again, stories differ as to how this argument began and how it escalated into a physical altercation. Atkins claimed that Davis tried to hit him with a glass chalice and he grabbed her arm and took her to the ground to avoid being hit. On the other hand, defense witnesses claimed that during the argument, Atkins just got angry and twisted Davis' arm behind her back, knocking her to the floor. Following this altercation, Atkins escorted Davis to the door and shoved her out. Davis and her granddaughters left, leaving a friend they had brought at Atkins' residence. When Atkins and his friend Charles realized that this friend was still there, Charles took her home.
When Charles returned, he went to Atkins' bedroom and they sat and talked for awhile about the events of the evening. Suddenly, the sliding screen door in Atkins' bedroom opened and Hector, Davis and Davis' granddaughter, Mycole, entered the room. Immediately, Hector sprayed Atkins in the face with mace (or pepper spray) and began swinging a tire iron at him. Charles testified that only Hector had weapons, the mace and the tire iron, while Atkins testified that Davis also had mace and a club of some sort. Hector hit Atkins several times with the tire iron, one blow cutting open the top of his head, causing extensive bleeding. Atkins was able to crawl out of the room and escape through the front door. Meanwhile, the assailants exited through the same door they came in. Charles and Atkins' testimony was virtually identical regarding the events of that evening, except the minor differences stated above.
Immediately thereafter, the police arrived, apparently called by a neighbor. Atkins refused to cooperate with the police and in fact was belligerent with them, trying to get them to leave. He gave the police no information about his injury or the events of the evening. While there, the officers saw the wound to Atkins' head which was bleeding profusely, the furniture in the bedroom in a disarray, a great deal of blood in the bedroom and some throughout the house, a pepper spray can, and they noticed a very strong smell of pepper spray. After the attack, Atkins phoned the Hector/Davis residence several times saying many threatening and angry things, some to people answering the phone, some on the answering machine. A few of these recorded messages made reference to the attack. Also, Atkins drove by the residence, yelled obscenities from the yard and threw something at the house.
A few days after the attack, Atkins decided to file a report with the police on the advice of a therapist. On the same day that he had reported the incident, Davis filed telephone harassment charges against Atkins.
Several alibi witnesses testified that Hector and Davis were elsewhere at the time of these attacks, including Mycole, Davis' husband, a neighbor and a friend.
Hector was charged with and convicted of aggravated burglary and felonious assault. In order to prove aggravated burglary, the state was required to show that Hector, by force or stealth, trespassed in an occupied structure when another person other than an accomplice of the offender was present, with purpose to commit the criminal offense of felonious assault and at the time had a deadly weapon on or about his or her person or under his control. R.C. 2911.11(A)(2). In addition, the state was required to prove that Hector knowingly caused physical harm to another person, John Atkins, by means of a deadly weapon in order to establish a felonious assault in violation of R.C. 2903.11(A)(2).
Viewing all of the evidence in a light most favorable to the state, we find sufficient evidence to support the convictions for both offenses described above. Furthermore, based on all of the evidence, keeping in mind that we are required to defer to the credibility determinations of the jury, we do not find that Hector's convictions were against the manifest weight of the evidence. Accordingly, the second assignment of error raised in appellate counsel's Anders brief is not well taken.
 III
All three of the errors raised in Hector's "brief" essentially argued that his trial counsel was ineffective. As stated previously, in order to prevail on an ineffective assistance of counsel claim, Hector must prove both deficiency in counsel's performance and resulting prejudice.Strickland, supra.
The first issue raised by Hector is that his counsel failed to interview or call several witnesses. Generally, an attorney's determination of which witnesses to call falls within the realm of trial strategy. State v. Hunt (1984), 20 Ohio App.3d 310, 312. Further, a court will not second-guess the trial attorney's tactical decisions.State v. Edwards (1997), 119 Ohio App.3d 106, 110 (citations omitted). It follows that the mere failure to call witnesses does not render counsel's assistance ineffective absent a showing of prejudice. Statev. Coulter (1992), 75 Ohio App.3d 219, 230. Courts are reluctant to find on direct appeal that an attorney has been ineffective for failing to call a witness, because it is difficult to show on direct appeal that a witness' testimony could have changed the outcome of the trial. Statev. Brant (May 22, 1998), Portage App. No. 97-P-0019, unreported, at p. 4. See, e.g., State v. Otte (1996), 74 Ohio St.3d 555, 565-566;Coulter, supra.
Hector failed to name any of the alleged witnesses that his trial counsel failed to interview or call. We have no way of knowing who these witnesses are or what their testimony would be. Most importantly, we do not have any indication that their testimony would have changed the outcome of the trial. Furthermore, any knowledge regarding the potential testimony of these witnesses could only be gained by looking outside the record, which we are prohibited from doing on direct appeal. See, Statev. Cooperrider (1983), 4 Ohio St.3d 226, 228. Instead, this is an issue that could be raised under R.C. 2953.21 in a motion for post-conviction relief.
Hector has also argued that his counsel was ineffective for failing to submit phone records to rebut the testimony of one of the state witnesses. Again, we would need to look outside the record to determine if those records exist or if Hector was prejudiced by their absence.
Finally, Hector argues that his counsel was ineffective for failing to provide him with pre-trial transcripts. Again, this information is completely outside the record and therefore beyond our consideration.
Based on the foregoing, we find that none of the issues raised by Hector in his brief have arguable merit for direct appeal. Accordingly, all three of his assignments are overruled.
In addition to addressing the assignments of error raised in both counsel's and Hector's brief, we have thoroughly reviewed the record below and have found no other issues with arguable merit.
Judgment affirmed.
FAIN, J., and YOUNG, J., concur.