DECISION
{¶ 1} Defendant-appellant, Jack J. Thacker ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas convicting him of rape, in violation of R.C. 2907.02, kidnapping, in violation of R.C. 2905.01, and aggravated burglary, in violation of R.C. 2911.11, entered upon a jury verdict. Appellant also appeals the trial court's finding of appellant to be a violent sexual predator under R.C.2971.01(H)(1).[1]
 {¶ 2} The events giving rise to appellant's charges began on January 27, 2005, when Debra Rouse ("Rouse"), the victim, received a telephone call from Danny Lowe ("Lowe"), a friend that lived in her trailer park. Lowe indicated that some friends were at his trailer and that they needed a fourth person to play cards. Appellant was one of the persons at Lowe's trailer. Appellant and Rouse knew each other through Lowe, as they had met a few weeks prior to this incident. Appellant had been to Rouse's trailer before, and the two had been intimate on a prior occasion.
 {¶ 3} Rouse went to Lowe's to play cards, and she testified that she drank a beer and a half while she was there. Rouse began feeling uncomfortable around appellant and decided to leave. Despite insisting that she could walk home herself, appellant accompanied her. According to Rouse, when they got to her door, she told appellant that he could go back to Lowe's, but appellant remained. When Rouse unlocked the door, appellant pulled the door open, pushed Rouse through the hallway, and began jerking her clothes off. Rouse testified that she was crying and telling appellant, "no don't." (Tr., at 85.) Rouse described that appellant held a knife to her and told her that he wanted "some" and would kill her if he did not get "some." (Id.) After throwing Rouse to the ground, appellant put his knee in her stomach and hit her repeatedly in her mouth, eye and face. Appellant began having vaginal intercourse, but was having a difficult time. Therefore, he grabbed Rouse by her hair and drug her down the hall to her bedroom, and went into the bathroom to get some lotion. While appellant went into the bathroom, Rouse dialed 911, but hung up when appellant came out of the bathroom.
 {¶ 4} Rouse testified that appellant again forcefully engaged in vaginal intercourse, this time successfully. A 911 operator called back during this time and appellant picked up the telephone and then quickly hung up without saying anything. Shortly thereafter, Rouse heard the police knock on the door. Appellant held his hands over Rouse's mouth so that she was unable to say anything. Appellant finally got up and Rouse ran to the door and opened it, naked and appearing badly beaten.
 {¶ 5} According to the police officers, from the Columbus Police Department, that were at the scene, they arrived at Rouse's residence after being dispatched there on a report of a 911 hang-up call. The radio room had called the number back, and instructed the officers that someone answered the telephone, and then hung up without saying anything. When the officers arrived, they knocked on the door, but no one answered. As the officers began to walk away from the front door to look around the residence, they heard a muffled cry for help. At that point, the officers began knocking and yelling that they were the police. There was still no response, so the officers called for help from the fire department so that they could pry open the door. Officer Waugh began walking around the residence, when he heard a second cry for help and another male voice, which prompted him to call for additional police units. Officer Waugh saw appellant through a window, and although he could not see below appellant's waist, Officer Waugh observed appellant walking through the trailer without a shirt.
 {¶ 6} The officers' testimony established that when Rouse finally opened the door, she was naked and appeared frightened. Rouse's lips and eyes were swollen, one eye was completely shut, and there was sweat and dried blood on her face. The officers entered the residence and found appellant hurriedly trying to pull up his pants. Appellant was arrested and Rouse was transported to the hospital.
 {¶ 7} At the hospital, Theresa Colbert ("Colbert"), a nurse employed at Grant Hospital, examined Rouse and noted a total of 18 injuries to Rouse, appearing on her face, head and neck area, as well as her abdomen, knee, shin, and elbow. At the scene, police recovered boxer shorts and a partially opened knife in the living room. Police also recovered two lotion bottles, one on top of the refrigerator, and one on the nightstand in Rouse's bedroom. The fingerprints on the bottle found on the nightstand matched that of appellant, and the DNA in the saliva on Rouse's neck matched appellant's.
 {¶ 8} Appellant was indicted on February 7, 2005, and charged with one count of aggravated burglary, in violation of R.C.2911.11, one count of kidnapping, in violation of R.C. 2905.01, and one count of rape, in violation of R.C. 2907.02. The case proceeded to a jury trial, which began on May 23, 2005. The jury returned a verdict of guilty on all counts. At appellant's sentencing hearing on July 18, 2005, the trial court merged the aggravated burglary and kidnapping charges, and sentenced appellant to seven years on the merged charges, consecutive to an eight-year sentence on the rape charge. The trial court also found appellant to be a violent sexual predator. Appellant timely appealed, and asserts the following four assignments of error for our review:
First Assignment of Error:
The trial court erred in finding Jack J. Thacker to be a violent sexual predator.
Second Assignment of Error:
The trial court erred in giving consecutive sentences to Jack J. Thacker.
Third Assignment of Error:
The convictions were against the manifest weight of the evidence.
Fourth Assignment of Error:
Jack J. Thacker was not provided effective assistance of counsel as required by the Sixth Amendment to the United States Constitution.
 {¶ 9} In his first assignment of error, appellant contends the trial court erred in finding him to be a violent sexual predator. According to R.C. 2941.148, classification of an offender as a sexually violent predator is precluded unless the indictment includes a specification that the offender is a sexually violent predator. Here, no such specification was attached to, or included in the indictment, and appellee concedes that what it requested was that appellant be classified as a sexual predator under R.C. 2950.09. Thus, whether appellant is a sexually violent predator pursuant to R.C. 2971.01, was not before the trial court, and the trial court did err in so finding. The trial court did, however, make some findings on the record that would be applicable to a finding that appellant is a sexual predator. Whether this was the trial court's intention is unclear to this court. Accordingly, we sustain appellant's first assignment of error, and remand this matter to the trial court for a sexual predator determination.
 {¶ 10} In his second assignment of error, appellant argues that the trial court erred in giving consecutive sentences in violation of jury principles afforded by the Sixth Amendment to the United States Constitution and in contravention of Blakelyv. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, andApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348. InState v. Foster, ___ Ohio St.3d ___, 2006-Ohio-856, the Supreme Court of Ohio determined that portions of Ohio's sentencing statutes violate the Sixth Amendment to the United States Constitution in the manner set forth in Apprendi. However, this court has recently held that a defendant who did not assert aBlakely challenge in the trial court waives that challenge, and is not entitled to a resentencing hearing based on Foster. SeeState v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445. Appellant did not present a Blakely argument in the trial court even though appellant was sentenced after the Supreme Court's decision in Blakely. Thus, appellant could have objected to his sentence based on Blakely and the constitutionality of Ohio's sentencing scheme. Appellant, however, did not raise such challenge in the trial court, and, therefore, appellant waived his Blakely argument on appeal. Accordingly, we overrule appellant's second assignment of error.
 {¶ 11} In his third assignment of error, appellant contends that his convictions are against the manifest weight of the evidence. Appellant does not challenge the sufficiency of the evidence or assert that the state failed to produce evidence as to any element of the offenses of which he was convicted. Appellant's argument contests the credibility of Rouse's testimony because Rouse could not recall the amount of time that elapsed while she was with appellant. Because of her difficulty in recalling what time she left Lowe's trailer and because there was testimony about Rouse being highly intoxicated at the time, appellant argues that the evidence does not support the charges of which he was convicted. Appellant also directs us to the fact that Rouse admitted that she and appellant had a previous sexual encounter, and that on this occasion on January 28, 2005, there was no bodily fluids or DNA that indicated that Rouse had been penetrated in any way.
 {¶ 12} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Tompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins,
supra, at 387, quoting Martin, supra.
 {¶ 13} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible.State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 14} Rouse testified that she left Lowe's trailer with appellant at around midnight. However, the call to 911 did not occur until after 8:30 am. Thus, appellant argues that because the events described by Rouse could not have taken place over an eight-hour period, Rouse's testimony is not credible. Appellant also directs us to the portion of Lowe's testimony in which he stated that Rouse was highly intoxicated when she left his trailer.
 {¶ 15} Appellant concedes that given Rouse's injuries, something happened on January 28, 2005, but argues there is no other evidence, other than Rouse's testimony, to support the charges of which he was convicted. Since, according to appellant, Rouse's testimony is completely not credible, he argues that his convictions are against the manifest weight of the evidence. The victim provided the only account of what happened with appellant. Appellant focuses on Rouse's inability to recall the time when she got to Lowe's trailer and the time she left. While Rouse testified that she thought it may have been around midnight when she left Lowe's trailer, she repeatedly asserted, both on direct, and cross-examination, that she did not know what time it was when she left. Rouse testified that she normally does not look at the clock, nor does she wear a watch, and that she did not take note of the time when she left Lowe's. Rouse did, however, state that she left Lowe's when the card game broke up. When asked what broke up the card game, Rouse replied that she started "getting all shaky" from appellant and that the other guys had gotten up and gone to lie down. (Tr., at 83.)
 {¶ 16} Lowe, the only witness called by the defense, testified that Rouse arrived at his trailer after one in the morning. Lowe described that appellant was teaching Rouse how to play a card game called "Tonk," when at about "5:30 to quarter to six," Lowe decided to go to bed. (Tr., at 217.) Lowe testified that Rouse left at that time.
 {¶ 17} While there is an inconsistency with respect to the time that Rouse left Lowe's trailer, Rouse and Lowe are consistent in that Rouse left when Lowe decided to go to bed, which according to Lowe was approximately 5:30 to 5:45 in the morning. Inconsistencies in the testimony do not render a verdict against the manifest weight of the evidence, but are for the jury to resolve or discount accordingly. DeHass, supra. Further, the fact that Rouse was unable to recall what time it was when she left Lowe's trailer does not render all of her testimony incredulous. While an issue regarding her credibility was raised, the jury was properly instructed to weigh and evaluate the credibility of the witnesses. After deliberating, the jury resolved the issue in appellee's favor.
 {¶ 18} We reach this same conclusion with respect to appellant's contention regarding Rouse's alleged intoxication. Rouse testified that she consumed a beer and a half, while Lowe testified that Rouse was "drunk" and "stumbling" beginning around 4:30 in the morning. (Tr., at 218.) As this court has consistently held, the weight to be given to inconsistencies in any witnesses' testimony is a determination within the province of the trier of fact. The jury was free to believe, or disbelieve, any part of the witnesses' testimony, and a conviction is not against the manifest weight of the evidence merely because the jury believed the prosecution's testimony. SeeState v. Smith, Franklin App. No. 04AP-726, 2005-Ohio-1765. After reviewing the record, we find there was sufficient, competent, credible evidence to support appellant's convictions. We decline to substitute our judgment for that of the jury regarding the credibility of the witnesses or the weight to be given to their testimony.
 {¶ 19} Accordingly, appellant's third assignment of error is overruled.
 {¶ 20} In his fourth assignment of error, appellant argues that he was denied effective assistance of counsel as required by the Sixth Amendment of the United States Constitution because he did not testify at trial. According to appellant's argument on appeal, the only way for the jury to seriously consider a set of verdicts different from those reached would have been for appellant to testify as to what happened after he walked Rouse to her trailer.
 {¶ 21} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Id. at 687. The defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 22} According to Strickland:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687.
 {¶ 23} Appellant argues that his trial counsel was ineffective because appellant did not testify at trial, and that although he professed his innocence to the court throughout the trial, he did not get the opportunity to do so in front of the jury. Appellee contends that appellant's arguments are pure speculation since there is nothing in the record to suggest how appellant would have testified.
 {¶ 24} "Under Ohio law, a licensed attorney is presumed competent, and `effective assistance of counsel does not equate with a winning defense strategy,' nor do debatable trial tactics necessarily constitute a violation of defense counsel's duties."State v. Reeves, Franklin App. No. 05AP-158, 2005-Ohio-5838 at ¶ 23. Trial counsel's decisions regarding the calling of witnesses, including the defendant, is within the purview of trial strategy. State v. Coulverson (Mar. 21, 2002), Franklin App. No. 01AP-893, 2002 Ohio 1324; State v. Coulter (1992),75 Ohio App.3d 219, 230; State v. Hunt (1984), 20 Ohio App.3d 310,312.
 {¶ 25} As with many cases involving allegations of rape, it often comes down to the testimony of the victim. "When one is dealing with the credibility of a single witness upon whom the state relies to prove its case in a criminal matter, it is a legitimate trial tactic for a defendant to determine not to call witnesses." State v. Sandy (1982), 6 Ohio App.3d 37, 38. Appellant had felony convictions in his background and a lengthy record that began when appellant was 11 years old. In fact, when these charges were incurred, appellant was on parole from a sentence imposed upon convictions for felonious assault and breaking and entering, which involved shooting at a police officer. Trial counsel may have reasoned that having appellant's record come before the jury would have been too prejudicial to his client. Further, other than suggest in his appellate briefs how he may have testified at trial, appellant is unable to demonstrate that calling him as a witness would have resulted in a different outcome at trial. Additionally, there is no indication that appellant wished to testify at trial, even though he was informed by the trial court of his right to testify. When addressing appellant regarding his behavior while other witnesses were testifying, the trial court stated, "All I'm saying is, you know, you are kind of testifying at that point in time, so you have the Constitutional right to testify or not, okay." (Tr., at 176.)
 {¶ 26} Upon review of the record, we find that appellant has provided only speculative arguments regarding what his testimony may have been, as well as the mere possibility that the outcome of the trial would have been otherwise had he testified at trial. Such is not enough to overcome the strong presumption that defense counsel's failure to call him to testify was anything but sound trial strategy. Consequently, appellant has not established that his counsel's actions constituted ineffective assistance of trial counsel. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 27} For the foregoing reasons, appellant's second, third, and fourth assignments of error are overruled, his first assignment of error is sustained, we reverse the trial court's judgment relating to the court's determination that appellant is a sexually violent predator, and we remand this matter to that court for a sexual predator determination.
Judgment affirmed in part; reversed in part; and causedremanded.
Klatt, P.J., and Brown, J., concur.
[1] The trial court's judgment entry, however, references R.C.2950.09.