WEIMER, J., dissenting.
 

 Although I very respectfully dissent from the majority's ultimate ruling, there are propositions involved in this case that must be acknowledged and from which I believe no one could reasonably disagree. Specifically, this case presents as a terrible tragedy, which is far too common. A person is dead. The defendant faces a lengthy prison term. There was evidence of domestic abuse. Such abuse is never acceptable. These propositions rightly invoke a desire to do something to change whatever can be changed in this tragic situation, but these propositions do not and cannot result in putting aside the single legal issue with which this court is now presented: whether the defendant met the substantial burden of proof imposed in her post-conviction proceeding after being convicted by a jury that heard the evidence, including the testimony of the defendant herself.
 

 The crux of the defendant's argument is that she received ineffective assistance of counsel because her attorney failed to investigate and present an expert on domestic violence.
 
 [1]
 

 The law is well established that "claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 693,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984). "It is not enough for the defendant to show that [counsel's] errors had some conceivable effect on the outcome of the proceeding."
 

 Id.
 

 at 693
 
 ,
 
 104 S.Ct. 2052
 
 . Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
 

 Id.
 

 at 694
 
 ,
 
 104 S.Ct. 2052
 
 .
 

 In the instant post-conviction proceeding, for many reasons, the defendant never reaches the point of showing that, without counsel's alleged errors, "the result of the proceeding would have been different."
 

 Id.
 

 Most notably in that regard, although defense counsel called no expert on battered woman's syndrome, the jury was presented with the factual predicates from which it was free to accept or reject the theory that the defendant killed her husband as a self-defense response to being abused.
 

 Indeed, much of the evidence presented at trial focused on the prior history of abuse inflicted upon her by her husband. While laden with potential contradictions to the self-defense theory, the defense also presented the theory that the defendant did not point the gun at her husband, but that, instead, the gun accidentally discharged and her husband was struck by the bullet after it ricocheted off the floor. From all that appears, the ricochet theory was not the product of counsel's strategy, but was presented mainly through the defendant's own trial testimony.
 

 In stark contrast to either defense theory, the jury was presented with eyewitness testimony from the decedent's son that the defendant had not been abused and had pointed the gun at the decedent. Additionally, forensic evidence established that the bullet entered the decedent at an angle that was not the result of a ricochet and that, in the room where the shooting occurred, no evidence was ever found of the bullet striking anything other than the decedent.
 

 While the defendant remained adamant that she had the gun pointed downward
 when it fired, the state rebutted the defendant's ricochet claim at trial by presenting testimony that a strike mark would have been visible on the vinyl tiles located in the residence where the shooting occurred. No strike marks were found. Further evidence indicated the projectile recovered from the decedent's body had only "mild deformity," that the coroner testified came from striking a single rib of the decedent, not from a ricochet. Additionally, the coroner described the bullet's trajectory as level with the floor, further undermining the defendant's ricochet theory due to an accidental discharge. In sum, the unbiased forensic evidence undermined the defendant's accidental discharge testimony. The forensic evidence was corroborated by a witness, the decedent's son, who unequivocally testified that the defendant pointed the weapon directly at her husband and then the gun "went off."
 

 According to the court of appeal:
 

 [The defendant] recounted that the gun was loaded when she withdrew it from under the mattress. She denied loading the weapon and could not explain the presence of bullets on the bedroom floor when the police arrived. Also, she said she never pointed the gun at [her husband]; rather, she maintained that all the while [her husband] approached her, she kept the gun pointed at the floor. Finally, she said she received $25,000.00 in life insurance proceeds after the victim's death.
 

 State v. Curley
 
 ,
 
 08-1157 (La.App. 4 Cir. 5/12/10)
 
 ,
 
 2010 WL 8966072
 
 , p. 8.
 

 The jury was also presented with testimony describing the broader context of the shooting. Notably, the defendant and the decedent had physically separated. Immediately before the shooting, two people were visiting the decedent at the former matrimonial domicile. The defendant, informed these individuals were present, went to the former domicile. She was described as angry when she arrived. The defendant ordered the two visitors to leave and then the defendant and decedent began to argue.
 

 Recalling that the defendant's post-conviction claim of ineffective assistance of counsel is predicated on her counsel's failure to present an expert on battered woman's syndrome, it is noteworthy that at least five jurisdictions have found no merit to such claims on factual grounds.
 
 [2]
 
 To prevail on a claim of ineffective assistance of counsel based on the failure to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."
 
 United States v. Fields
 
 ,
 
 761 F.3d 443
 
 , 461 (5th Cir. 2014), as revised (Sept. 2, 2014) (quoting
 
 Day v.
 

 Quarterman
 
 ,
 
 566 F.3d 527
 
 , 538 (5th Cir. 2009) ).
 
 Accord
 

 State v. Jenkins
 
 , 14-1148, p. 17 (La.App. 4 Cir. 5/6/15),
 
 172 So.3d 27
 
 , 40 ("A petitioner, claiming that certain evidence should have been introduced or discredited, needs to attach that evidence to his application for the district court's review.").
 

 Here, the defendant made no such showing regarding what an expert would have established to aid in her trial defense, a failure that is consistent with the defendant's inability to demonstrate prejudice under other aspects of the
 
 Strickland
 
 standard. Considering the defendant advanced two potentially contradictory explanations for the shooting (accidental gun discharge and justification from abuse), the defendant failed to demonstrate that, with the testimony of an expert on battered woman's syndrome, "there is a reasonable probability that ... the result of the proceeding would have been different."
 
 Strickland
 
 ,
 
 466 U.S. at 694
 
 ,
 
 104 S.Ct. 2052
 
 . Moreover, as this court has previously recognized, "it is not the State's burden to disprove conjectured theories of prejudice."
 
 State v. Thomas
 
 , 12-1410, p. 13 (La. 9/4/13),
 
 124 So.3d 1049
 
 , 1057.
 

 CONCLUSION
 

 Domestic abuse in any form is wholly unacceptable and cannot be tolerated. While the majority opinion appropriately discusses the law related to domestic abuse, the failure of proof in this case of inadequate assistance of counsel should not be overlooked. Such proof has long been a part of the law regarding when a defendant has demonstrated justification for vacating a criminal conviction and sentence.
 

 Like the majority and others who have written in the field, I find the term "battered women's syndrome" problematic. However, this is the term advanced in argument by the defendant, and sometimes employed in this discussion.
 

 See
 

 Neelley v. State
 
 ,
 
 642 So.2d 494
 
 , 508 (Ala. Crim. App. 1993),
 
 writ quashed as improvidently granted
 

 sub nom.
 

 Ex parte Neelley
 
 ,
 
 642 So.2d 510
 
 (Ala. 1994) ;
 
 People v. Moseler
 
 ,
 
 202 Mich.App. 296
 
 ,
 
 508 N.W.2d 192
 
 , 194 (1993) ;
 
 People v. Rollock
 
 ,
 
 177 A.D.2d 722
 
 , 723,
 
 577 N.Y.S.2d 90
 
 (Sup. Ct. App. Div. N.Y. 1991) ;
 
 State v. Coulter
 
 ,
 
 75 Ohio App.3d 219
 
 ,
 
 598 N.E.2d 1324
 
 , 1330 (12th Dist. 1992) ;
 
 State v. Balke
 
 ,
 
 173 Wis.2d 306
 
 ,
 
 498 N.W.2d 913
 
 (App. 1992) (unpub'd; available at
 
 1992 WL 437315
 
 ),
 
 review denied
 
 ,
 
 501 N.W.2d 458
 
 (Wis. 1993).
 

 Among these, most relevant to the defendant's case here is
 
 Balke
 
 , in which the defendant took the position that the killing was "accidental and unintentional."
 

 Id.
 

 1992 WL 437315
 
 , p. 1. Consequently, and instead of ineffective assistance of counsel, the court found the defendant in
 
 Balke
 
 "never laid an appropriate foundation for this evidence, failing to testify that she killed her husband as a result of prior beatings."
 

 Id.