OPINION
Defendant-appellant, Barbara J. Coulverson aka Caldwell, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of attempted murder, felonious assault, aggravated robbery, and kidnapping pursuant to a jury verdict.
Defendant's appeal arises out of an incident where an assailant struck eighty-one-year-old Emma Lindsley ("the victim") several times on her head with a barbell at the victim's apartment in Columbus, Ohio. The assailant then stole between fifty and eighty dollars from the victim, disconnected her telephone, and left her bleeding profusely. The victim suffered several lacerations to her head, and broken fingers from her efforts to shield her head during the attack.
According to the state's evidence, the victim lived in a government subsidized apartment building that housed senior citizens and handicapped persons capable of independent living. The victim used a walker, had a housekeeper because she could not clean the apartment herself, received Meals on Wheels because she did not cook, and relied on a friend to take her to the grocery store. A church van transported her to church services at Mt. Vernon Baptist Church, which she attended regularly. The victim joined Mt. Vernon Baptist Church because she was unable to manage the steps at her former church. The victim had no family in Columbus, but talked to the pastor of her church several times a week.
On Saturday, December 2, 2000, the victim was sitting in the lobby of her apartment building when defendant unexpectedly appeared at the door. The apartment building had a security door, but the victim let defendant into the building because she knew defendant since: (1) the victim and defendant were members of the same church, where the victim sat behind the defendant at services on Sundays, (2) the victim and defendant occasionally went with a group of church members to restaurants after church services, and (3) on one previous occasion the defendant had been to the victim's apartment to borrow forty dollars, which she repaid.
The victim and defendant chatted in the lobby of the apartment building for some time, during which the victim introduced defendant to some of the building's residents. When the victim mentioned she was hungry for a fish sandwich, the defendant offered to get her one. The victim gave defendant some money from a small pouch she carried, and defendant left to get the food. When defendant returned approximately an hour later, the fish sandwich was cold and they went to the victim's apartment so she could eat the sandwich.
According to the victim, she ate her sandwich while she was sitting in a chair facing a coffee table in the living room; defendant sat at the kitchen table smoking a cigarette. The victim testified that after she asked defendant to pour some orange juice, defendant sneaked up behind her and began hitting her in the head with a barbell defendant had hidden in her jacket. The victim testified she moved into her bedroom where defendant again struck her in the head with the barbell and yelled at the victim to "[g]ive me your money." (Tr. 35-37, 42-45.) The victim gave defendant the pouch in which she kept her money, and defendant took over fifty dollars from the pouch. Defendant counted the money while the victim was "bleeding like a hog" (Tr. 45); defendant pulled the telephone connection out of the wall and left the victim's apartment. While blood ran down her face and all over her clothes, the victim reconnected her telephone and called her pastor, whose number she had near the telephone. The victim told her pastor defendant had attacked and robbed her. The victim identified defendant in court as the person who attacked and robbed her.
Pastor Henry Leftridge immediately drove to the victim's apartment and arrived fifteen to twenty minutes later. Pastor Leftridge testified that upon entering the victim's apartment he "saw the most horrible scene that I have seen in my life." (Tr. 89.) He stated the victim was bleeding profusely and "had blood all over her. She had visible gashes in her head. She had bruises on her arms, on her hands, on her face. And I am amazed that she's still alive." (Tr. 89.) Pastor Leftridge described the scene as "blood everywhere," with blood in the hallway, bedroom, living room and bathroom, and on the carpet, walls, furniture, sink, and the victim's clothing. (Tr. 89-90.) The pastor called 9-1-1. The following Monday, the pastor spent several hours in the victim's apartment attempting to clean up the blood and throwing away bloodied clothing and other items. Two of the victim's chairs and her bedspread had to be discarded due to bloodstains on them. Bloodstains on the carpet could not be removed.
Paramedics were dispatched at 4:50 p.m. and arrived at the victim's apartment at 4:54 p.m. The paramedics found at least seven one-inch cuts on the victim's scalp, but found her to be alert, oriented and able to answer questions properly. The paramedics dressed the victim's wounds, gave her oxygen and an I.V., and transported her by ambulance to Grant Medical Center, where she remained for over three days. At the hospital, she received stitches in her hand, as well as clamps and stitches in her head where she suffered nine severe lacerations.
Detective Christopher Rond briefly interviewed the victim after her arrival at the hospital. Appearing lucid, the victim told him what happened at her apartment and specifically identified defendant as the person who struck her with a barbell and robbed her. Following the interview, the detective went to the victim's apartment, which he described as having a vast amount of blood throughout it. When the detective again interviewed the victim six days later at her apartment, the victim again named defendant as the person who assaulted her with a barbell, which the victim described as orange-red in color. The victim also identified defendant in a photographic array.
The detective subsequently interviewed defendant, who acknowledged being in the victim's apartment the afternoon the victim was assaulted. The detective and other law enforcement personnel executed a search warrant on defendant's house on January 2, 2001, during which a pair of barbells and another, single, barbell were collected. The single barbell was concealed in an old dusty medical bag covered by other items. The single barbell matched the description of the barbell the victim gave to the detective.
The defense rested without presenting any evidence, and the jury found defendant guilty of attempted murder, felonious assault, aggravated robbery, and kidnapping. Proceeding directly to sentencing, the court ordered defendant to serve ten years for the attempted murder to run concurrently with an eight-year sentence for the felonious assault. The court ordered those sentences to run consecutively to a ten-year sentence for the aggravated robbery offense, which the court ordered to run concurrently with an eight-year term on the kidnapping offense, for a total sentence of twenty years imprisonment. Defendant appeals, assigning the following errors:
 I. APPELLANT WAS DENIED DUE PROCESS OF LAW IN THAT THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE JUDGMENT OF THE TRIAL COURT, AND SUCH JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE COURT ERRED AS A MATTER OF LAW IN SENTENCING APPELLANT TO CONSECUTIVE TERMS OF IMPRISONMENT.
 III. COUNSEL WAS INEFFECTIVE THEREBY DENYING APPELLANT HER RIGHT TO COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH
AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, AND SECTIONS 10 AND 16 OF ARTICLE I OF THE OHIO CONSTITUTION.
In her first assignment of error, defendant contends her conviction for attempted murder is supported by insufficient evidence and is against the manifest weight of the evidence. Defendant asserts the prosecution failed to present medical testimony that the cuts to the victim's head, either individually or cumulatively, were life-threatening, and accordingly failed to demonstrate that defendant acted purposefully or specifically intended to cause the victim's death.
To the extent defendant challenges her conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 260, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported.
When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"); Conley, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
To establish attempted murder pursuant to R.C. 2923.02 as it relates to R.C. 2903.02, the state must establish that defendant "purposely engaged in conduct which, if successful, would have caused [the victim's] death." State v. Osborn (Apr. 8, 1999), Franklin App. No. 98AP-741, unreported, citing State v. Kidder (1987), 32 Ohio St.3d 279, 283. See, also, State v. Edwards (1985), 26 Ohio App.3d 199. A person acts purposely when it is his or her specific intention to cause a certain result. See R.C.2901.22(A); see, also, Edwards, supra; State v. Koenig (June 20, 1996), Allen App. No. 1-95-61, unreported. A jury may infer an intent to kill where (1) the natural and probable consequence of a defendant's act is to produce death, and (2) all of the surrounding circumstances allow the conclusion that a defendant had an intent to kill. Edwards, supra, citing State v. Robinson (1954), 161 Ohio St. 213; see State v. Morgan (Nov. 17, 1987), Franklin App. No. 86AP-854, unreported; Osborne, supra. A jury may infer an intent to kill where the victim was vulnerable and was struck in the head with a forceful blow. State v. Clay (Mar. 28, 2000), Franklin App. No. 99AP-404, unreported.
Here, the victim was a vulnerable eighty-one-year-old woman who needed a walker to get around, and who was unable to cook meals or clean her apartment without assistance. The evidence at trial allows an inference that defendant, who was an acquaintance of the victim, purposely brought a concealed barbell into the victim's apartment for the purpose of assaulting and robbing the victim. The victim was forcefully struck on the head several times with a barbell, causing at least seven severe lacerations and heavy bleeding. Based on evidence that the attacker disconnected the telephone and left the victim weakened and bleeding profusely, the jury rationally could infer and conclude that the attacker intended the victim to bleed to death without being able to summon help. Construed in favor of the prosecution, the evidence supports defendant's conviction of attempted murder.
Additionally, defendant's conviction is not against the manifest weight of the evidence. Defendant did not present any evidence at trial. Given the evidence before the jury already noted, the jury's verdict on the attempted murder charge is not against the manifest weight of the evidence. Accordingly, defendant's first assignment of error is overruled.
In her second assignment of error, defendant contends the trial court erred in imposing consecutive sentences without stating on the record the requisite findings and its reasons for imposing consecutive sentences, as required by R.C. 2929.14(E)(4) and 2929.19(B)(2)(c).
To impose consecutive sentences upon defendant in compliance with R.C.2929.14(E)(4)(b) of the revised sentencing provisions, the trial court needed to expressly find (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) "[t]he harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct." (Emphasis added.) Additionally, pursuant to R.C. 2929.19(B)(2)(c), the court was required to state its reasons for imposing the consecutive sentences.
Here, the trial court noted during sentencing that certain criteria must be met to impose consecutive sentences, and the court then set forth the criteria as follows:
 *** The first plateau, if you will, is when necessary to protect the public and punish the offender.
 Again, it seems to me that the most horrible offense is one where an elderly person of 82 years of age is bludgeoned practically to death with a piece of steel beaten over the head and robbed in her own apartment.
 It seems to me that when a member of the public or member of our society thinks in terms of crime, prevention of crime and punishment for crime, if these are not the kinds of crimes for which we take people off the street, I have no idea what crimes we should take people off the street. Absolutely, if the purpose of criminal law is not to protect the public, i.e., this 82-year-old elderly lady, and punish the offender for beating her nearly to death, then we should not be here. We need not go through this process. So I think anything less demeans the gravity of this offense. I don't think consecutive sentences are disproportionate to the conduct or the danger the offender poses. The evidence was substantial in this case, evidence by the unanimous verdict of the jury in all four cases, notwithstanding that the defendant has never so much as acknowledged any part in this, notwithstanding the evidence to the contrary. I think that the harm is so great and unusual that a single term does not adequately reflect the seriousness of the conduct. I don't know what conduct could be more serious than bludgeoning an 82-year-old lady and taking her money of which she had very little. So I can't think of a more sickening offense, especially for the elderly. (Tr. 304-306.)
The trial court adhered to the statutory requirements when it imposed consecutive sentences on defendant. In accordance with R.C.2929.14(E)(4)(b), the court expressly found consecutive sentences were necessary in this case to protect the public and punish the offender, consecutive sentences are not disproportionate to the conduct or the danger the offender poses, and the harm is so great and unusual that a single term does not adequately reflect the seriousness of the conduct. In compliance with R.C. 2929.19(B)(2)(c), the court stated the factual basis and its reasons for imposing consecutive sentences on defendant, specifically noting that a single term of imprisonment does not adequately reflect the seriousness of the conduct where an eighty-two-year-old elderly person is bludgeoned almost to death in her own apartment and robbed of the little money she had. The court complied with the statutory requirements of R.C. 2929.14(E)(4)(b) and 2929.19(B)(2)(c), and defendant's second assignment of error is accordingly overruled.
In her third assignment of error, defendant asserts she was deprived of the effective assistance of counsel at trial by counsel's (1) failure to have defendant's mental capacity evaluated for a possible insanity defense, (2) failure to file an alibi defense, (3) failure to investigate other crimes or offenses in the victim's apartment building, (4) failure to call witnesses, including defendant, at trial, (5) failure to object to admission of the state's exhibits, (6) failure to investigate the victim's mental or physical status, (7) failure to object to the jury form for the felonious assault offense, and (8) failure to move for an acquittal pursuant to Crim.R. 29 on the attempted murder count.
In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-prong test enunciated in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052; accord State v. Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011. Initially, defendant must show that counsel's performance was deficient. To meet that requirement, defendant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Defendant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690. Next, if defendant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland test requires defendant to prove prejudice in order to prevail. Id. at 692. To meet that prong, defendant must show counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. Id. at 687. A defendant meets this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
This court need not determine whether defense counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies. Bradley, supra, at 143, citing Strickland, supra, at 697. "[T]he test for prejudice must be conducted in light of the evidence in the record." Bradley, supra, at 146. Defendant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. State v. Carter (1995), 72 Ohio St.3d 545, 558, certiorari denied, 516 U.S. 1014, citing Strickland, supra, at 689.
Defendant initially contends trial counsel was deficient for failing to have defendant evaluated for her competence to stand trial and for the presentation of a possible insanity defense. A defendant is legally incompetent if "incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense[.]" R.C. 2945.37(G); State v. Tibbetts (2001), 92 Ohio St.3d 146,164, certiorari denied (2002), 122 S.Ct. 1100. A defendant is presumed to be competent to stand trial unless proof by a preponderance of the evidence is presented as to the defendant's incompetency. State v. Berry (1995), 72 Ohio St.3d 354, 360. Moreover, a defendant has the right to a hearing on the issue of competency "where the record contains `sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." Id. at 359, citing Drope v. Missouri (1975), 420 U.S. 162, 95 S.Ct. 896.
No evidence in the record suggests defendant was legally incompetent to stand trial. Similarly, no evidence in the record indicates defendant "did not know, as a result of a severe mental disease or defect, the wrongfulness of [her] acts" to support an insanity defense. R.C.2901.01(A)(14); Tibbetts, supra, at 164-165. Because the record contains no factual or legal basis to support defendant's assertions that she may have lacked competency to stand trial or may have had a viable insanity defense, defendant has failed to demonstrate defense counsel was ineffective for failing to raise these issues. Counsel need not raise meritless issues or even all arguably meritorious issues. State v. Taylor (1997), 78 Ohio St.3d 15, 31, certiorari denied, 522 U.S. 851.
Defendant next contends counsel was ineffective for failing to file an alibi defense. However, defendant failed to demonstrate a factual basis for an alibi defense, and the record reveals no facts supporting such a claim. Thus, no basis exists to find deficient performance by defense counsel for failure to raise an alibi defense.
Third, defendant asserts her trial counsel was deficient for failing to investigate other crimes or offenses in the victim's apartment building. A "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, supra, at 691. Defendant has failed to demonstrate any prejudice she may have suffered due to defense counsel's alleged failure to investigate such other offenses, as defendant has failed to show that, but for defense counsel's alleged failure to investigate, a reasonable probability exists that the result of the trial would have been different. Bradley, supra, paragraph three of the syllabus.
Fourth, defendant claims defense counsel rendered ineffective assistance for failing to call any witnesses, including defendant, at trial. A counsel's decisions regarding the calling of witnesses is within the purview of trial strategy, and the failure to subpoena witnesses for trial does not violate counsel's duty to defendant absent a showing of prejudice. State v. Coulter (1992), 75 Ohio App.3d 219, 230; State v. Hunt (1984), 20 Ohio App.3d 310, 312. Defendant has not demonstrated how defense counsel's failure to call witnesses at trial, including defendant, prejudiced defendant or deprived defendant of a substantial defense that would have resulted in a different outcome at trial. Nor has defendant overcome the strong presumption that defense counsel's failure to call her to testify was sound trial strategy. Consequently, defendant has not established that her counsel's failure to call witnesses constituted the ineffective assistance of trial counsel. See State v. Sandy (1982), 6 Ohio App.3d 37, 38-39 (concluding counsel not ineffective where the defendant was convicted on the testimony of one prosecution witness and defense counsel presented no witnesses, including the defendant); State v. Pannell (Dec. 26, 1989), Franklin App. No. 89AP-436, unreported (holding counsel's failure to call the defendant as a witness on his own behalf is not unreasonable where defendant does not demonstrate why decision was unreasonable).
Fifth, defendant contends defense counsel's failure to object to the admission of the state's exhibits constituted ineffective assistance of counsel. However, defendant fails to identify the basis for excluding any of the exhibits had an objection been made, and defendant has failed to demonstrate how she was prejudiced by the admission of any of the state's exhibits. Therefore, defendant has not carried her burden of showing deficient performance by defense counsel in that regard.
Sixth, defendant claims defense counsel conducted no investigation of the victim's mental or physical status, specifically possible vision problems due to cataracts. The record does not reflect whether defense counsel was aware prior to trial the victim might have vision problems. Nevertheless, at trial, the victim testified on direct examination she had cataracts "on both sides." Moreover, contrary to defendant's assertion on appeal, the victim was able to identify the clothing that each prosecutor wore in the courtroom, as well as the defendant and what she was wearing in the courtroom. Where the jury was made aware of possible vision problems of the victim, defendant has failed to show on this record she was prejudiced by any failure of defense counsel to investigate the victim's condition.
Seventh, defendant asserts defense counsel was ineffective for failing to object to the jury verdict form for felonious assault, which did not include language requiring the jury to find that defendant knowingly caused serious physical harm, or caused physical harm with a deadly weapon. The record, however, reveals the trial court instructed the jury on all of the elements of felonious assault, including an instruction that to find defendant guilty of felonious assault beyond a reasonable doubt, the jury must find "defendant knowingly caused serious physical harm to Emma Lindsley or caused physical harm to Emma Lindsley by means of a deadly weapon." (Tr. 274-277.) In the verdict form in question, the jury unanimously agreed to "find the Defendant Barbara Caldwell GUILTY of Felonious Assault as charged in Count Two of the Indictment." Defendant has not alleged or proven prejudice as a result of the jury finding defendant guilty of felonious assault after the jury was properly instructed on the offense charged in the indictment.
Finally, defendant asserts her trial counsel's performance was ineffective because counsel failed to move for an acquittal pursuant to Crim.R. 29 on the attempted murder offense. The record does not support defendant's claim. The record reveals that after the state rested its case, defense counsel moved for a directed verdict of acquittal pursuant to Crim.R. 29; the trial court denied the motion. Defendant's assertion is without merit.
Accordingly, defendant's third assignment of error is overruled. To the extent defendant relies on matters outside the record to support her claims under her third assignment of error, post-conviction relief, if available, may better address her claims of ineffective assistance of counsel.
Having overruled defendant's three assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
BOWMAN and BROWN, JJ., concur.