[Cite as *State v. Mohler*, 2011-Ohio-6121.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| THE STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| v. | : |  |
|  | : | Case No. 2011-CA-0048 |
| ERIC MOHLER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Licking County
Court of Common Pleas, Case No.
09CR550

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      November 28, 2011

APPEARANCES:

For Plaintiff-Appellee

BRIAN WALTZ
20 South Second Street
Newark, OH 43055

For Defendant-Appellant

J. MATTHEW DAWSON
35 S. Park Pl., Ste. 10
Newark, OH 43055

*Gwin, P.J.*

{¶ 1} Defendant-appellant Eric S. Mohler appeals the February 10, 2010 Judgment Entry of the Licking County Court of Common Pleas Court overruling his motion to suppress evidence. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶ 2} Appellee did not file a brief in this matter. Pursuant to App.R. 18(C) in determining the appeal we may accept appellant's statement of the facts and issues as correct, and reverse the judgment if appellant's brief reasonably appears to sustain such action. See *State v. Rohrig* (Apr. 2, 2001), Fairfield App. No. 00 CA 39, and *Chowdhury v. Fitzgerald* (Mar. 27, 1997), Guernsey App. No. 96 CA 43. Therefore, we presume the validity of appellant's statement of facts and issues.

{¶ 3} At the evidentiary hearing on appellant's motion to suppress held February 8, 2010, the following facts were established as noted by the trial court's February 10, 2010 Judgment Entry.

{¶ 4} On October 20, 2009, Detective Alan Thomas responded to the Budget Inn. A traffic stop was being conducted on a white Cavalier driven by Erica Smith. As Detective Thomas arrived, a canine sweep of the car was being conducted. Detective Thomas testified he saw appellant emerge from room 127 at the Budget Inn. Appellant was coming outside to see what was going on with Ms. Smith, his fiancée. Detective Thomas testified that he spoke briefly with the appellant. Detective Thomas then proceeded to the manager's office of the hotel to find out who had rented the room. Detective Thomas further contacted the Sheriff's office and the probation department because he knew that appellant was out on bond and on probation for failure to register

as a sex offender. Appellant was under Indictment for felony trafficking in heroin and for failing to register as a sex offender in an unrelated case. Appellant had been released on bond thirteen days earlier.

{¶ 5} Detective Thomas testified that when he came back to the scene after having talked to the manager, he advised appellant of his *Miranda* rights. The detective testified that Officer Barnes of Adult Court Services (probation department) came to the scene together with Detective Collins, the officer in charge of sexual registration for the Licking County Sheriff's Office. Detective Thomas further testified that appellant was not arrested when given the *Miranda* warnings, however he was aware of the issues concerning his registration requirements and bond terms. Detective Thomas testified he did not ask the appellant for permission to search the hotel room. Appellant was subsequently arrested for violating the terms of his bond.

{¶ 6} Detective Doug Bline testified that on October 20, 2009 he, Detective Thomas, Detective Cortwright of the Newark Police Department and Sergeant Romano from the Newark Police Department were all members of the Central Ohio Drug Enforcement taskforce. Detective Bline testified he had dealt with Erica Smith before on possession and trafficking of heroin charges. Detective Bline said he saw the white Cavalier at the Circle K and knew there was a female inside of it. A patrol officer observed a traffic violation and made a traffic stop on the vehicle. Ms. Smith was identified as the driver. Detective Bline requested consent to search her car, which Ms. Smith denied. Because of that denial, a canine was brought to the scene to conduct a drug sweep around the outside of the vehicle. The canine produced a positive hit on the vehicle. The vehicle was then searched revealing drug paraphernalia and both used

and unused balloons inside the car. Detective Bline testified the balloons were used to package heroin.

{¶ 7} Detective Bline testified that he *Mirandized* Ms. Smith before speaking with her and she agreed to speak with him. Ms. Smith confirmed that she was staying at the hotel in room 127 with appellant. Detective Bline told Ms. Smith they had found paraphernalia in the car and asked her if there was anything going on in the room. Ms. Smith initially denied there was anything going on in the room. He asked her consent to search the room, which she denied. Detective Bline testified that the drug canine had an abnormal reaction at the closed door to the room although not what he would characterize as a positive response. Detective Bline told Ms. Smith that he would attempt to get a search warrant for the room and that she could not return there although she was free to go. Ms. Smith became upset, was annoyed and wanted to go into the room. Detective Bline reiterated she could not. Subsequently, Ms. Smith was arrested on a possession of heroin charge. That offense had occurred in August; however, the detectives had only recently obtained the lab reports from BCI. Those results had been forwarded to the prosecutor for indictment but had not yet been presented to the grand jury.

{¶ 8} After Ms. Smith was arrested, she asked to speak to Detective Bline. Ms. Smith indicated to him that there were things in the room but they were not hers. She further indicated that there might be a little dope in the room but that it did not belong to her. She told Detective Bline that the drugs belonged to a Robert Berger whose truck had been repossessed and that she and appellant were holding the drugs for him. He asked for consent to search the room. Ms. Smith indicated she needed to speak to

appellant before agreeing to allow the officers to search the hotel room. Detective Bline testified that he accompanied Ms. Smith to where appellant was being detained and that he stood approximately three feet away from them while they spoke. Detective Bline testified appellant told Ms. Smith that he was being arrested anyway, so in essence, whatever. Ms. Smith signed the consent to search form.

{¶ 9} However, Detective Bline also asked for appellant's consent because appellant stayed in the room. Detective Bline testified appellant said several times it was not his room and therefore the police did not need his consent to search the room. Detective Bline, however, asked appellant to consent and said he would not search the room without appellant's consent. Detective Bline told appellant he would attempt to obtain a search warrant in the event appellant decline to give his written consent. Detective Bline testified appellant had the opportunity to read the consent form but chose not to read the form.

{¶ 10} Appellant testified that he told Ms. Smith to allow the police to search the room. However, he further testified that he changed his mind after Ms. Smith told him there was something inside the room. He then testified that he told Ms. Smith to tell the police whatever they found inside the room belonged to him because he was going to jail in any event. Appellant testified that he told Detective Bline that the room was in Ms. Smith's name so appellant's consent was not needed in order to search the room. Appellant stated that Detective Bline asked for his consent because appellant also stayed in the room. Appellant testified he refused to sign the consent form until the officer told him they would arrest Ms. Smith and obtain a warrant unless he signed the consent form.

{¶ 11} The trial Court found that appellant and Ms. Smith were properly *Mirandized* and further that the consent of both appellant and Ms. Smith "was freely and voluntarily made as demonstrated by the fact that both occupants had denied requests to consent to the search, but after reflection or discussion with each other, changed their mind and consented in writing."

{¶ 12} On February 25, 2010 appellant entered *Alford* pleas of no contest to Trafficking in Heroin, in violation of R.C. 2925.03(A)(1)(C)(6)(a), a felony of the fifth degree; Trafficking in Heroin(Vicinity of a Juvenile), in violation of R.C. 2925.03(A)(1)(6)(c), a felony of the third degree, with a forfeiture specification; Possession of Heroin, in violation of R.C. 2925.11 (A)(C)(6)(c), a felony of the third degree; and Possession of Drug Paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. A Pre-Sentence Investigation Report was prepared and the Court sentenced appellant to nine months on Count 1; three years on Count 2; and four years on Count 3. Further, appellant was sentenced to 30-days in jail on Count 4. The trial court ordered the sentences to be served consecutively for an aggregate prison sentence of seven years, nine months and a 30-day jail sentence.

{¶ 13} Appellant filed a Notice of Appeal pro se on April 25, 2011. On July 26, 2010, this Court dismissed that appeal because appellant had failed to file a brief in accordance with App. R. 18(C). On June 7, 2011, this court granted appellant's motion to file a delayed appeal.

{¶ 14} Appellant raises the following as his sole assignment of error for our consideration:

**{¶ 15}** "I. COUNSEL WAS INEFFECTIVE BY FAILING TO REQUEST THAT THE DEFENDANT'S MOTION TO SUPPRESS BE GRANTED AND FAILURE TO SUBPOENA WITNESSES."

I.

**{¶ 16}** In his sole assignment of error, appellant argues that he was denied effective assistance of trial counsel. We disagree.

**{¶ 17}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶ 18}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance* (2009), --- U.S. ----, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251.

**{¶ 19}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will

render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

**{¶ 20}** "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶ 21}** In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶ 22}** Appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland,* 466 U. S. at 691 ("An error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

{¶ 23} Appellant first contends that his trial counsel was ineffective because he did not include a request that the trial court grant his motion to suppress upon the ground that the prosecutor did not file a written response. Appellant claims that the trial judge would have granted the motion on that ground if defense counsel had requested it by proper motion. [Appellant's Brief at 7].

{¶ 24} Appellant points to the following exchange between the trial judge and the prosecuting attorney prior to the commencement of the hearing on appellant's Motion to Suppress:

{¶ 25} "MR. WALTZ: Yes, Your Honor.

{¶ 26} "THE COURT: Am I correct you have not filed a response to the motion?

{¶ 27} "MR. WALTZ: That's correct, Your Honor.

{¶ 28} "THE COURT: How come?

{¶ 29} "MR. WALTZ: How come?

{¶ 30} "THE COURT: Yeah.

**{¶ 31}** "MR. WALTZ: I did not think it was necessary. If the Court would like, I can -- I can file something.

**{¶ 32}** "THE COURT: I think the pretrial statement indicates it's to be filed on or before the date of the hearing. This is the second hearing date, so doesn't it --

**{¶ 33}** "MR. WALTZ: That's correct. Like I said, it was not my intention to file it.

**{¶ 34}** "THE COURT: I'll make sure I mandate it every time from now on. Otherwise, I assume you don't oppose it and I can just grant it, right, since there has been no opposition filed?

**{¶ 35}** "MR. WALTZ: I do not think that's a reasonable assumption to make.

**{¶ 36}** "THE COURT: Why not? Why Not?

**{¶ 37}** "MR. WALTZ: Because I didn't file a response just means I think the law -- I'm ready to present evidence contrary.

**{¶ 38}** "THE COURT: How do we know that? That could have been your written response, I suppose.

**{¶ 39}** "Anything else you can think of before you call your first witness, Mr. Waltz?

**{¶ 40}** "MR. WALTZ: No, Your Honor." (T. Motion to Suppress, February 8, 2010 at 5-6).

**{¶ 41}** We do not find the statements of the trial judge to indicate that he would have granted the motion if appellant's trial counsel had made a motion based upon the prosecutor's failure to file a written response. Criminal Rule 12(C)(3) provides for motions to suppress evidence including any testimony because it was illegally obtained. Criminal Rule 12(F) Ruling on Motion provides:

{¶ 42} "The court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means.

{¶ 43} "A motion made pursuant to divisions (C)(1) to (C)(5) of this rule shall be determined before trial. Any other motion made pursuant to division (C) of this rule shall be determined before trial whenever possible. Where the court defers ruling on any motion made by the prosecuting attorney before trial and makes a ruling adverse to the prosecuting attorney after the commencement of trial, and the ruling is appealed pursuant to law with the certification required by division (K) of this rule, the court shall stay the proceedings without discharging the jury or dismissing the charges.

{¶ 44} "Where factual issues are involved in determining a motion, the court shall state its essential findings on the record."

{¶ 45} The Rule does not explicitly mandate the prosecutor file a response. In contrast, App. R. 18 provides:

{¶ 46} "(C) Consequence of failure to file briefs

{¶ 47} "If an appellant fails to file the appellant's brief within the time provided by this rule, or within the time as extended, the court may dismiss the appeal. If an appellee fails to file the appellee's brief within the time provided by this rule, or within the time as extended, the appellee will not be heard at oral argument except by permission of the court upon a showing of good cause submitted in writing prior to argument; and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

{¶ 48} Thus, even this court has not been empowered to forgo a decision on the merits of a controversy simply because the opposing party has not filed a written response. Appellant's contention otherwise is without merit.

{¶ 49} Appellant next contends that his trial counsel was ineffective because he failed to subpoena appellant's co-defendant Ms. Smith to testify at his motion to suppress hearing. Appellant contends that the trial court indicated that appellant did not call her as a witness and did not have standing to challenge her search. [Appellant's Brief at 7-8].

{¶ 50} Counsel's decision regarding the calling of witnesses is within the purview of trial strategy, and the failure to subpoena witnesses for trial does not violate counsel's duty to defendant absent a showing of prejudice. *State v. Coulter* (1992), 75 Ohio App.3d 219, 230, 598 N.E.2d 1324; *State v. Hunt* (1984), 20 Ohio App.3d 310, 312, 486 N.E.2d 108. Accordingly, courts have traditionally been reluctant to find ineffective assistance of counsel in those cases where an attorney fails to call a particular witness. See *State v. Otte* (1996), 74 Ohio St.3d 555, 565-66, 660 N.E.2d 711; *State v. Williams* (1996), 74 Ohio St.3d 456, 659 N.E.2d 1254

{¶ 51} Appellant has not demonstrated that his counsel's failure to subpoena Ms. Smith would have changed the result of the proceedings. Indeed, the testimony of the co-defendant clearly had the potential to be adverse to appellant's interests. See, e.g. *State v. Hunt* (1984), 20 Ohio App.3d 310, 312, 486 N.E.2d 108; *Goldsby v. United States* (6th Cir 2005), 152 Fed Appx. 431, 436.

{¶ 52} In any event the trial court found both appellant and Ms. Smith's consent was "freely and voluntarily made as demonstrated by the fact that both had denied

requests to consent to the search, but after reflection or discussion with each other, changed their mind and consented in writing."

{¶ 53} Accordingly, appellant has failed to establish that he has been prejudice by counsel's performance.

{¶ 54} For all the forgoing reasons, appellant's sole assignment of error is overruled.

{¶ 55} The judgment of the Licking County Court of Common Pleas is affirmed.

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY

Wise and Delaney, JJ., concur.

[Cite as *State v. Mohler*, 2011-Ohio-6121.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THE STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| v. | : | JUDGMENT ENTRY |
| | : | |
| ERIC MOHLER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-0048 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed.  Costs to appellant.

_____

HON. W. SCOTT GWIN

_____

HON. JOHN W. WISE

_____

HON. PATRICIA A. DELANEY