[Cite as *State v. Pierce*, 2013-Ohio-3593.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| BURTON JAMES PIERCE | : | Case No. 2013CA00020 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2012-CR-0837

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      August 19, 2013

APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

JOHN D. FERRERO                              BERNARD L. HUNT
Prosecuting Attorney                            2395 McGinty Road, N.W.
                                                 North Canton, OH 44720

By: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
110 Central Plaza, South – Suite 510
Canton, OH 44702-1413

*Baldwin, J.*

{¶1}    Defendant-appellant Burton J. Pierce appeals his conviction and sentence from the Stark County Court of Common Pleas on eight (8) counts of receiving stolen property. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On July 23, 2013, the Stark County Grand Jury indicted appellant on nine (9) counts of receiving stolen property in violation of R.C. 2913.51(A), felonies of the fourth degree, and one (1) count of arson in violation of R.C. 2909.03(A)(2), also a felony of the fourth degree.  At his arraignment on August 17, 2012, appellant entered a plea of not guilty to the charges.  Pursuant to a Judgment Entry filed on September 28, 2012, the trial court granted appellant's request to sever the arson charge from the receiving stolen property charges for purposes of trial.

{¶3}    A jury trial on the charges of receiving stolen property commenced on December 11, 2012.  Prior to the commencement of trial, defense counsel stipulated to the fact that the nine vehicles were stolen and to the dates that they were stolen.

{¶4}    George Rafailedes testified that in February of 2012, he was the owner of a 1989 Chevy Caprice. He testified that he reported the vehicle stolen on or about February 12, 2012 and that the vehicle was running fine. Rafailedes testified that he made a police report and that the Canton Police Department later called him and told him that they had the vehicle in the impound lot.  The steering column was broken. Rafailedes testified that he did not know appellant and never gave him permission to have his vehicle.

{¶5}     Robert Selig testified that at one time he owned a 1988 G20 Chevy van that was operable. He reported the van stolen on or about February 17, 2012. Selig contacted the police department and filed a report. He testified that the police contacted him the same day and told him that they had found the van at a chop shop on Harrisburg Road. The steering column was damaged. According to Selig, he did not know appellant and never gave him permission to have the van.

{¶6}     The next witness to testify was Tammy Cline. She testified that, in February of 2012, she was in possession of a 1986 Pontiac that was owned by her father. Cline testified that she reported the vehicle, which was in  mint condition, stolen on February 13, 2012 and that the police later contacted her and told her that the vehicle was in the Canton impound lot.  The steering column was damaged. Cline testified that she did not know appellant and did not give him permission to have her vehicle.

{¶7}     Connie Rose next testified that she reported her 1989 G20 van, which was operable, stolen on February 15, 2012. The police contacted her on or about February 20, 2012 and told her that they had located her vehicle at a chop shop on Harrisburg Road.  When she later saw her vehicle in the impound lot, the steering column was broken and the outside was damaged.  Rose testified that she did not know appellant and did not give him permission to have her vehicle.

{¶8}     Ethan Frey testified that in February of 2012, he was the owner of a 1995 Oldsmobile Cutlass that ran perfectly.  He reported the vehicle stolen on February 17, 2012.  Frey was later contacted by the Canton police and told that his vehicle had been recovered. The windows were broken out and the steering column was damaged. He

testified that he did not know appellant and did not give him permission to have his vehicle.

{¶9} At trial, Jason Shaw testified that, in February of 2012, he was the owner of a 1990 Chevy Suburban that ran fine. He reported the vehicle stolen on February 15, 2012. After the vehicle was recovered and taken to the impound lot, Shaw went down to see the vehicle. He testified that every piece of glass on the vehicle was broken, the suspension was broken and the steering column was damaged. He stated that he did not know appellant and did not give him permission to have his vehicle.

{¶10} Treva Mayle testified that, in February of 2012, she was the owner of a 1989 Oldsmobile Royale that was stolen. After the police called her and told her that the vehicle had been recovered and was in the impound lot, Mayle went to see the vehicle, which had been operable. The steering column was damaged, the windows broken out and the trunk was smashed. Mayle testified that she did not know appellant and did not give him permission to have her vehicle.

{¶11} Although Justin Smith, the owner of a 1989 Buick LaSabre, did not appear for trial, defense counsel stipulated that his vehicle was stolen.

{¶12} The next witness to testify was Detective Ryan Hostetler of the Stark County Sheriff's Office. He testified that on February 17, 2012, he was at the address of 2721 Harrisburg Road in Canton, which is the address of appellant's business. He testified that he parked to the south of the business in a city park parking lot and had a direct view of appellant's business. According to the Detective, he saw a white Chevy Caprice backed up to the fence on appellant's property and ran the license plate through the LEADS state database. The car came back as stolen. After calling for

assistance, Detective Hostetler went to appellant's business and spoke to appellant. He told appellant that they had received a tip that there were stolen vehicles in the back of appellant's property and that they were taking parts out for scrap. He also told appellant that the vehicle he saw through the fence was stolen. Appellant denied that there were any stolen vehicles on his property and gave the Detective consent to search his property. Numerous stolen vehicles were located in the backyard of appellant's property. The Detective testified that he witnessed one of appellant's employees "operating the white vehicle that was stolen out of the City of Canton, had a chain hooked to it which was hooked to another car. He was trying to flip the car back over which was sitting on it (sic) side." Transcript at 163. He further testified that some of the vehicles were located within 50 feet of the back of appellant's building.

{¶13} Detective Hostetler testified that he located nine vehicles in the back of appellant's business, all which were reported stolen. The vehicles were broken up and some had the motors pulled out. The Detective testified that about 60% of the vehicles had the steering columns broken, which indicated that they were stolen. All of the vehicles, except one, reported stolen out of Summit County, were towed to the Canton impound lot. He testified that all of the vehicles were GMC vehicles and that there was a 1986 Pontiac, a 1989 Chevy G20 van, another Chevy van,  a 1989 Oldsmobile,  a 1995 Chevy Bonneville, a 1989 Buick LaSabre, a Chevy Suburban and a car trailer.

{¶14} Detective Hostetler interviewed appellant about the stolen vehicles and the interview, which was recorded, was played for the jury. When the Detective spoke with appellant, appellant told him that he rented out the back of his business to Dwight Griffin and others. Detective Hostetler testified that appellant's business property was

not divided in any way and was like a single big backyard measuring a couple of acres. The majority of the property was fenced in and there was no fencing or signage indicating that one part of the property was being rented out to someone else. The stolen vehicles were scattered throughout the back of the property. When the Detective spoke to other individuals on the property, all claimed that they were appellant's employees and none claimed to be employees of the alleged renter.

{¶15} On cross-examination, the Detective testified that some of the vehicles were 150 feet from the back of appellant's building. He admitted that appellant told him that he had rented the rear of the property to Griffin and others, including David McCain, and that appellant told him that he had just found out that McCain was in jail. The Detective stated that he knew McCain had been charged with theft, vandalism and receiving stolen property, all which had nothing to do with appellant's business. The Detective also testified that appellant told him that Griffin's girlfriend, Chrystal, had been driving the white Chevy Caprice.

{¶16} Detective Hostetler further testified that appellant told him that he had just started the business within the last two weeks and that he ran an auto repair shop in the building and also scrapped cars. Appellant told him that he rented the property for $1,500.00 a month and had rented the rear 2 acre lot to Griffin and his friends for $500.00 a month. Appellant indicated to the Detective that he was going to get the $500.00 rent by removing catalytic converters from scrapped vehicles and that he did not know that Griffin was doing anything illegal. Appellant also told the Detective that he had a business at 30002 Harrisburg Road, N.E. and volunteered to go there with

Detective Hostetler so that he could search the place. The Detective testified that he went there with appellant and found a couple of scrapped cars that were not stolen.

{¶17}　On redirect, the Detective testified that appellant never showed him a lease agreement.

{¶18}　At the conclusion of the evidence, defense counsel made a Crim.R. 29 motion for judgment of acquittal. The trial court granted such motion with respect to Count Three[1] , but otherwise overruled the motion. The jury then found appellant guilty of the eight remaining charges.

{¶19}　Thereafter, on December 17, 2012, appellant entered a plea of guilty to the arson charge. As memorialized in a Judgment Entry filed on January 11, 2013, appellant was sentenced to a prison term of 24 months.

{¶20}　Appellant now raises the following assignment of error on appeal:

{¶21}　THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SEC. 10 OF THE OHIO STATE CONSTITUTION, BECAUSE THE APPELLANTS ATTORNEY FAILED TO CALL A WITNESS, PRODUCE THE LEASE AGREEMENT AND STIPULATED TO A CHARGE OF O.R.C 2913.51 (A), WITHOUT EVIDENCE OF A THEFT.

I

{¶22}　Appellant, in his sole assignment of error, argues that he was denied his right to the effective assistance of counsel. We disagree.

---

[1] Such count involved a vehicle owned by Mark King that was stolen from Summit County. King did not testify at trial.

{¶23}   A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶24}   In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley,* 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id.*

{¶25}   In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. Prejudice warranting reversal must be such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694. A court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would "reasonably likely been different" absent the errors. *Strickland,* 466 U.S. 695, 696. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* supra; *Bradley,* supra.

{¶26}   Appellant argues, in part, that his trial counsel was ineffective in failing to produce the alleged lease agreement that he had with Griffin and in  failing to call

Chrystal, Griffin's girlfriend, to testify in his defense about the existence of the lease agreement.

{¶27}   With respect to the lease agreement, appellant cannot demonstrate that such an agreement even existed. He cannot, therefore, demonstrate that his counsel was ineffective in failing to produce the same.  Moreover, counsel's decision regarding the calling of witnesses is within the purview of trial strategy, and the failure to subpoena witnesses for trial does not violate counsel's duty to defendant absent a showing of prejudice. *State v. Coulter*, 75 Ohio App.3d 219, 230, 598 N.E.2d 1324 (12th Dist 1992). Accordingly, courts have traditionally been reluctant to find ineffective assistance of counsel in those cases where an attorney fails to call a particular witness. See *State v. Otte*, 74 Ohio St.3d 555, 565–66, 1996-Ohio-108, 660 N.E.2d 711.

{¶28}   In the case sub judice, appellant cannot demonstrate how Chrystal would have testified. As noted by appellee, she might have testified that there was no lease agreement.  In short, we find that appellant has failed to demonstrate that he was prejudiced by the failure to present Chrystal's testimony. Appellant has failed to demonstrate that there exists a reasonable probability that, had trial counsel subpoenaed Chrystal, the result of his case would have been different.

{¶29}   Finally, appellant argues that his trial counsel was ineffective in stipulating to Count One, which concerned a stolen vehicle owned by Justin Smith. Smith did not testify at trial. At trial, defense counsel stipulated to the fact that Smith's vehicle was stolen after confirming from a Canton police Department report that the vehicle was reported stolen on February 13, 2012. Appellant now contends that defense counsel should not have so stipulated without testimony from the owner.

{¶30} However, as noted by appellee, the factual issue at trial was not whether or not the vehicles mentioned in the indictment were in fact stolen, but rather whether appellant knew or should have known that the vehicles, which were on his property, were stolen. Appellant was charged with receiving stolen property in violation of 2913.51(A). Such section states as follows: "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." The stipulation merely relieved appellee of the burden of proving that the vehicles were stolen- not of the burden of proving that appellant knew or had reasonable cause to believe that they were stolen. There is nothing in the record suggesting that counsel's decision to agree to the stipulation was anything but sound trial strategy. We must presume that counsel's performance was effective and that counsel had a reasonable basis to stipulate that Smith's car was stolen. See *State v. Braxton* 102 Ohio App.3d 28, 656 N.E.2d 970 (8th Dist. 1995). Finally, we note that there is no showing that trial counsel's decision to enter into such stipulation prejudiced appellant's defense. We concur with appellee that appellant cannot show that Justin Smith would not have testified that his vehicle was stolen and later recovered at appellant's business and that he had never given appellant permission to have possession of his vehicle.

{¶31} Based on the foregoing, appellant's sole assignment of error is overruled.

{¶32}   Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Farmer, P.J. and

Wise, J. concur.

_____
HON. CRAIG R. BALDWIN

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE

CRB/dr

[Cite as *State v. Pierce*, 2013-Ohio-3593.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff - Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| BURTON JAMES PIERCE | : | |
| | : | |
| Defendant - Appellant | : | CASE NO. 2013CA00020 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs assessed to appellant.

_____
HON. CRAIG R. BALDWIN

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE